## DREW v. HICKS.

### No. 19,199; January 25, 1894.

#### 35 Pac. 563.

**Nuisances—Prescriptive Right.—The Rule That a Right to** maintain a nuisance cannot be acquired by prescription applies only to public, and not to private, nuisances.

**Nuisance—Prescription.—Where Evidence Showing a Prescriptive** right to maintain a private nuisance has been admitted without objection that it is not within the issues made by the pleadings, it is an abuse of discretion to refuse to allow defendant to amend his answer so as to allege the right.[1]

**Surface Waters.—The Rule That Land is Subject to the Flow** of surface water from higher land does not apply to surface water turned on the lower owners by artificial changes made by those owning land above them.

APPEAL from Superior Court, San Bernardino County; John L. Campbell, Judge.

Action by H. L. Drew and C. W. Fairbanks against Sarah A. Hicks and William Curtis to enjoin defendants from constructing a bulkhead so as to turn water on plaintiffs' premises. From judgment for plaintiffs, defendants appeal. Reversed.

Rolfe & Freeman, Harris & Gregg and Paris & Satterwhite for appellants; Willis, Cole & Craig and C. W. C. Rowell for respondents.

HAYNES, C.—Appeal from the judgment and an order denying defendants' motion for a new trial.

---

[1] **Cited** with approval in Hardman v. Kelley, 19 S. D. 614, 104 N. W. 274, the court saying: "While in granting leave to amend pleadings, the court exercises a large discretion, yet that discretion should be exercised liberally in favor of granting such amendments, in order that the case may be fully tried upon its merits." In that case the trial court had properly stricken out of an amended answer certain defenses not conforming to the order allowing an amendment, but had denied a subsequent motion to amend, as specifically proposed, made before the next term of court, when such amendment would have entitled the defendant to judgment.

This case and the case of Drew v. Cole (No. 19,143, filed February 4, 1893, 3 Cal. Unrep. 765, 32 Pac. 229), were tried together in superior court and decided upon the same evidence. In Drew v. Cole, findings and judgment were for defendants, and upon appeal the judgment was affirmed, and a petition for rehearing denied. For a description of the premises of the respective parties, and a general statement of the facts involved, see Drew v. Cole, supra.

The complaint in Drew v. Cole was filed October 14, 1891, and in this case the complaint was filed November 9, 1891. The cases were different as to the specific relief sought, though depending largely upon the same facts and involving in the main the same questions of law. That case was brought to enjoin the defendants from constructing a bulkhead in a wash or ravine in Colton avenue, which separates the lands of plaintiffs and defendants, whereby the water would be prevented from flowing down that avenue, and would be turned, as was alleged, upon the premises of the plaintiffs. The defendants answered, and also filed a cross-complaint alleging that there was a natural watercourse over the lands lying to the eastward, which entered plaintiffs' premises at the southeast corner; that plaintiffs had built a dam across that watercourse at said corner of their land, and had excavated the ground on that portion of the avenue next plaintiffs' premises, whereby the water was turned down the avenue, and cut the ravine therein, and flooded defendants' lands, and, if the dam was allowed to remain, would cause them irreparable damage—and prayed that it be abated as a nuisance, and for an injunction. Findings and judgment went for the defendants, dismissing the complaint, and granting the prayer of the cross-complaint. In this case the complaint alleges, substantially as in the former complaint, "that the general trend of that section of the country is sloping at various grades from east to west and from southeast to northwest down to and across the premises of the defendants, and, in times of heavy storms, rain falling upon the same, or any large body of water flowing thereon, not absorbed by the soil, will, and always has, except when obstructed or diverted from its natural course as hereinafter stated, flowed in wide sheets of water down to, upon and across the premises of said defend-

ants,'' and charges that defendants, with a malicious and wrongful design to cause the water to flow down California street on the easterly side of defendants' premises, and with intent to discharge the same upon and across plaintiffs' premises, erected an embankment from two to four feet high along the east line of defendants' lands (that being the west side line of California street), and that, on top of said embankment on defendant Curtis' land, he attached wires to cottonwood trees, with the design to intercept brush and debris, which would constitute a barrier to the flow of water, and turn it down to and upon plaintiffs' land. The prayer is that the embankment and wire fence be abated as a nuisance.

The learned judge who tried these cases prepared a written opinion, in which he stated the material or more important facts found by him, and his conclusion thereon, and this opinion was signed and filed February 4, 1892; and afterward, on the 15th, formal findings were signed and filed in this case, the latter following quite closely the language of the complaint. In several important and controlling particulars, the facts in the latter are wholly inconsistent with the facts stated in the opinion filed by the court, and are also irreconcilable with the findings in Drew v. Cole in respect to facts equally pertinent and material to this case as to that. It is true that in Drew v. Cole there was no issue as to the embankment and wire fence, and the right of the defendants to maintain them was not adjudicated, while here that is the sole issue, and the sole right to be adjudicated. This conflict of findings, however, does not necessarily require a reversal of this case. If, upon all controlling questions of fact, the evidence was materially conflicting, we would be obliged to affirm both judgments, because of such conflict, unless there were other grounds for a reversal.

Appellants contend, not only that the findings are not justified by the evidence, but that the court erred in denying defendants' motion for leave to amend their answer to conform to the proofs given and received without objection. In the written opinion of the learned judge, which is incorporated in the statement on motion for a new trial, it is said: ''I am satisfied that the testimony discloses the fact that the Hicks embankment is to-day substantially as it existed for the past fifteen years. From the testimony and examination

of the premises, I am equally well satisfied that the embankment is above the natural surface of the ground, and the only right defendant Hicks could have to maintain the same would be by reason of the fact that she had acquired a prescriptive right to do so. This contention is urged by counsel for defendant Hicks in their argument on the final submission of the cause. After a careful examination of the pleadings, however, I do not see how their position can be maintained. Under our system of practice, he who would avail himself of the privilege of the statute of limitation must do so by a demurrer or answer. No such objection having been taken in this case, it is to be deemed as waived." Counsel for defendants then gave notice of a motion to amend their answer, on the ground that the allegations of the pleadings do not conform to the facts proven at the trial, and therewith served a copy of the proposed amendment. Upon the hearing the motion was denied. Defendants excepted, and took a bill of exceptions thereto, and this refusal to permit the amendment is assigned as one of the grounds upon which their motion for new trial was based. Respondents, while controverting the fact that the embankment is in the same condition as formerly, cite authorities to the proposition that continuance of a nuisance for any length of time does not give a prescriptive right to maintain it. If that is true, as applied to the circumstances of this case, the motion to amend was properly denied, as it would not aid the defense. The first case cited to this proposition is Mills v. Hall, 9 Wend. 315. But this case does not sustain respondents' proposition. If this embankment is a nuisance, it is a private one. In the case cited it was claimed that the dam corrupted the air, by which the health of plaintiff's family was affected. The defendants moved for a nonsuit upon the ground that, the dam having been continued for twenty years, no action would lie. The court said: "There is no such thing as a prescriptive right, or any other right, to maintain a public nuisance. . . . . If the defendants have for twenty years been permitted to overflow the plaintiff's land with their mill pond, so far as the injury to the land is concerned, they have by that length of possession acquired a right to use it in that manner, and are not responsible in damages to the plaintiff. So a man may overflow his own land; but, if such overflow spread disease

and death through the neighborhood, it must be abated, and he must respond in damages for any special injury which any individual may have sustained from it.''

All the cases cited by the respondents to this point are cases of public nuisance. But this question has been settled in this state, as well as elsewhere. In Learned v. Castle, 78 Cal., at page 46, 18 Pac. 872, and 21 Pac. 11, it was said: ''And to thus wrongfully cause water to flow upon another's land, which would not naturally flow there, is to create a nuisance per se. It is an injury to the right, and it cannot be continued because other persons might have a low estimate of the damages which it causes. And especially is this so when the continuance of the wrongful act might ripen into a right in the nature of an easement or servitude.'' See, also, Richards v. Dower, 64 Cal. 64, 28 Pac. 113, and other authorities cited in the support of the above quotation. I think the court erred in not granting the amendment, as all the evidence in relation to the purposes for which the embankment was made, and the length of time it had been maintained, had been received without any objection or any suggestion that it was not within the issues. Nor does it appear that it would have caused any delay in the disposition of the case, or that it would have made it necessary to take other or further testimony, while it is conceded by the learned judge that if the issue had been made, the proofs already before him would have required a different judgment. If the facts had been found in relation to the embankment as indicated in the opinion of the court, it would be quite clear that a judgment for defendants, which those facts require, could not have been sustained, because not within the issues, and in such case the judgment would have been reversed, and the cause remanded, in order that the answer might be amended to correspond with the facts proved and found, as was done in Bryan v. Tormey, 84 Cal. 130, 24 Pac. 319. Justice would clearly have been promoted by the amendment, and no wrong would have been inflicted upon the plaintiff by allowing it, and under such circumstances it was an abuse of discretion to deny the motion. Or if, for any reason, the court was of the opinion that good practice required its denial, it was still sufficient ground for granting a new trial, followed by leave to amend the answer, since it clearly appeared that, such

amendment being made, the facts required a different judgment. Most of the questions likely to arise upon a new trial have been noticed in the opinion in Drew v. Cole, supra, though some of them might be made more specific and which are especially called to our attention in respondent's brief. So far as the embankment is concerned, a prescriptive right to maintain it would make them immaterial, though we cannot assume that there may not be different evidence upon that point, but in any event the right to maintain the wire fence does not appear to have been acquired by prescription. We do not question the proposition laid down by respondents that where two fields or farms adjoin, and one is lower than the other, the lower must necessarily be subject to all the natural flow of water from the upper one. But this question is not always to be tested by the conditions existing at the time the suit is brought. What is meant by "the natural flow" is to be taken as of a time when its course has not been changed or affected by artificial means. As stated by the supreme court of Ohio, "the lower owes a servitude to the upper to receive the water which naturally runs from it, provided the industry of man has not been used to create the servitude": Butler v. Peck, 16 Ohio St. 334. See Ogburn v. Connor, 46 Cal. 352, where Butler v. Peck, and Washburn on Easements, second edition, page 427, to the same effect, are cited and approved. This principle is equally applicable to both plaintiffs and defendants. If before the surface of the lands above were changed, and natural channels or washes in which surface waters flowed were obstructed, the water did not flow over defendants' lands "in times of usual, ordinary and expected freshets," they have a right to protect themselves against surface water turned upon them by artificial changes made by those owning the land above them, and so far as they find it necessary for their protection, turn the water to channels where it originally flowed, provided they have not delayed until a right by prescription has been acquired against them. Nor does the flow of water over lands in case of extraordinary freshets, or such as are not expected or reasonably anticipated, affect the question. The supreme court of Pennsylvania (McCoy v. Danley, 20 Pa. 89), speaking of "usual, ordinary and expected freshets," for the consequences of which one might be liable said: "A flood is

another thing. It may not come for years together. When it does come it is a visitation of Providence, and the destruction it brings must be borne by those on whom it happens to fall.'' A cloudburst, such as the record shows occurred in 1891, could not aid materially, if at all, in determining the ''natural flow'' of surface water as it formerly existed nor affect the rights of any of the parties to this case. It was one of those inevitable calamities which are to be borne without complaint and cannot convert a fence or an embankment, otherwise lawful and proper into a nuisance which may be abated. I think the judgment and order appealed from should be reversed, with leave to the defendants to amend their answer.

We concur: Vanclief, C.; Belcher, C.

HARRISON and GAROUTTE, JJ.—For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, with leave to the defendants to amend their answer.