(63 N. W. Rep. 889.)

---

ALEXANDER ANDERSON *vs.* FIRST NAT. BANK OF GRAND FORKS.

Opinion filed May 14th, 1895.

### Amendment of Pleading to Conform to the Proofs.

The trial court has power to allow the amendment of the complaint on the trial to conform to the proof by the insertion of an allegation that defendant sold to itself property of the plaintiff, where the original complaint set forth a cause of action for the balance of the proceeds in the hands of the defendant on the theory that he had sold such property to a third person as agent for plaintiff, plaintiff not asking to have the complaint so amended as to entitle him to recover as for conversion, but only on the theory of waiving the tort and suing on an implied promise to pay the value of the property so converted.

### Surprise—Abuse of Discretion to Refuse Amendment.

Plaintiff having been so misled by defendant's conduct as to believe that defendant had in fact sold to a third person, and having therefore framed his complaint on that theory, and defendant's cashier having, without objection from defendant's counsel, testified on the trial that defendant sold such property to itself, and such fact being undisputed, *held*, it was an abuse of discretion for the trial court to refuse to allow plaintiff to amend his complaint to conform to the proof.

### Agent Cannot Sell to Himself.

An agent authorized to sell property of his principal cannot sell the same to himself. The rule is the same when he is authorized to sell at a specific price, and assumes to sell to himself at that price. Such a sale, followed by a claim of ownership thereunder, constitutes a conversion of the property.

### Waiver of Tort, and Suit in Assumpsit.

The owner may waive the tort, and treat the conversion as a purchase, and recover in assumpsit the value of the property at the time of such conversion, with interest from the date thereof.

### Practice—Notice of Intention, and Motion for New Trial—Not United.

It is bad practice to unite in the same instrument notice of intention to move and notice of motion for a new trial.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by Alexander Anderson against the First National

Bank of Grand Forks, N. D. Judgment for defendant, and plaintiff appeals.

Reversed.

*Phelps & Phelps*, for appellant.

*Burke Corbet*, for respondent.

CORLISS, J. On the former appeal this litigation presented to us the case of the pursuit by the plaintiff of an alleged balance in the hands of the defendant arising from a supposed sale by defendant as agent for the plaintiff of certain promissory notes owned by him. It was on this theory that the complaint was framed. We so held when the case was before us on the previous appeal. See *Anderson* v. *Bank*, (4 N. D. 182,) 59 N. W. 1029. It is true that the question of the proper construction of the complaint was not regarded by counsel on that appeal as being of much moment, and we have therefore felt disposed to consider it anew. Further study of the pleading only confirms our former view. It does not set forth a sale by plaintiff to defendant. Neither does it allege a breach of the agent's duty to sell for the price specified by the plaintiff in his instructions to the agent. It discloses only one theory of liability, and that is the receipt by the defendant, as agent of the plaintiff, of a larger sum on the sale of the property by the defendant than it had accounted for. A reference to the complaint will make this clear. It alleges that: "On the 3rd day of October, A. D. 1891, the defendant telegraphed to the plaintiff at Seattle, Washington, requesting plaintiff to telegraph his best offer for a sale of said seven promissory notes by the defendant for the plaintiff to a third person, who was not named in said telegram from defendant to plaintiff, and thereupon the plaintiff telegraphed to the defendant as follows: 'To First National Bank, Grand Forks, North Dakota: Will give discount of five hundred dollars. Alex. Anderson.' That the defendant duly received said telegram from the plaintiff, and thereupon the defendant sold the said seven promissory notes to a person

unknown to the plaintiff, and received the proceeds of said sale, and on the 7th day of October, A. D. 1891, the defendant remitted to the plaintiff the sum of four thousand three hundred and ninety-seven and 48–100 ($4,397.48) dollars, part of the proceeds of said sale, and mailed to the plaintiff his promissory note to the defendant for two thousand ($2,000) dollars, hereinbefore mentioned, and notified the plaintiff that defendant's commission for selling said seven promissory notes was the sum of thirty-five ($35) dollars, but the defendant has wholly failed to pay or remit, or cause to be paid or remitted, to the plaintiff the balance due him on said sale, and the defendant is now indebted to the plaintiff, as and for said balance due him, in the sum of six hundred and ninety-seven and 52-100 ($697.52) dollars, with interest thereon at the rate of seven per cent. per annum from and after the 7th day of October, A. D. 1891. That on receiving from the defendant said remittance of four thousand three hundred and ninety-seven and 48-100 ($4,397.48) dollars, and said note for two thousand dollars, the plaintiff forthwith mailed and deposited in the post office at the City of Seattle, in the State of Washington, directed to defendant, at Grand Forks, North Dakota, a written notice that he would not accept said remittance and note as full payment of the proceeds of said sale, but that he should insist that defendant account to plaintiff for and remit to him the balance due him upon the full amount owing to plaintiff on said notes at the time of said sale, to-wit, the sum of seven thousand six hundred and thirty ($7,630) dollars, less the five hundred ($500) dollars discount which had been agreed to by plaintiff, as aforesaid."

The failure of the plaintiff to allege in terms the amount actually received by defendant does not affect the question. The pleading might have been open to demurrer on that account, or to a motion to make it more specific; but the whole scope of the pleading shows that plaintiff claimed that there was an unpaid balance in defendant's hands arising from such sale, for which he sought to have the defendant account. Our conclusion touching

the true interpretation of the complaint destroys the force of defendant's argument that plaintiff had elected to treat the relations between himself and the defendant as that of seller and purchaser, instead of that of principal and agent, and therefore could not, by the proposed amendment hereinafter referred to, seek to hold defendant on the theory of a conversion of the property, on the ground that, while acting as agent, it had, in violation of its duty, attempted to sell the property to itself. The complaint remained in this form down to the time of the second trial. In the course of the trial the plaintiff called as a witness the cashier of the defendant. He testified that the bank did not sell the notes to a third person, but sold them to itself. Thus was revealed a conversion by the defendant of the plaintiff's property. An agent authorized to sell cannot himself make the purchase. This is elementary. *Bank* v. *Simons*, 133 Mass. 415; Story, Ag. § 211; Mechem, Ag. § 401, and cases cited. Nor does the fact that he is authorized to sell at a specified price alter the rule. Story. Ag. § 211; *Ruckman* v. *Bergholz*, 37 N. J. Law, 437; *Tyler* v. *Sanborn*, 128 Ill. 136, 21 N. E. 193; *Iron Co.* v. *Harper*, 41 Ohio St. 108; *Porter* v. *Woodruff*, 36 N. J. Eq. 174.

The defendant, having assumed to own and control these notes by virtue of an illegal and void purchase thereof, converted them to its own use, and became liable for their value. The attitude it took with respect to the paper on the 7th of October, 1891, was hostile to the rights of the plaintiff, the owner thereof. It obtained no title by virtue of this attempted sale to itself, and yet it assumed to own them, and has exercised acts of ownership over them ever since that day. Its position on the argument of this case was that it owned them. It thus appears that, on the trial, the defendant's cashier, without any objection being interposed by defendant's counsel, testified to a fact which established that defendant was liable for the conversion of these notes. Immediately upon discovering this fact, the counsel for plaintiff asked leave to amend the complaint by incorporating an allegation of such fact in the complaint. The court denied his motion,

and directed verdict against him, except as to the small items referred to in the former opinion. We think that this was an abuse of discretion. Of course, we use this phrase in its legal sense. The undisputed facts showed that defendant had converted the plaintiff's property, and was liable for such conversion. It is true that, despite the testimony of defendant's cashier, defendant might have been able to produce witnesses to show that his testimony was false. But this is extremely improbable. Such evidence, coming from defendant's cashier, was almost equivalent to an admission by defendant of the fact of such conversion. Its failure to claim that it was surprised by the proposed amendment, or that, if the amendment was allowed, it ought to be granted a continuance to enable it to prepare to meet this issue, and show the evidence of its own cashier to be untrue, makes it plain to our minds that the evidence of such cashier was in fact true; and in this view we are confirmed by the statement of defendant's counsel in this court that defendant did in fact buy the notes itself. The defendant was responsible for the error of the plaintiff in framing his complaint. The whole trend of the correspondence between the parties shows that defendant assumed to act as agent for the plaintiff in selling these notes to a third person, and that plaintiff supposed that he had done so. On the 14th of September, 1891, defendant wrote the plaintiff a letter relating to this matter in which the following passage occurs: "We offered you a trade at $1,000 discount. Now, if you will make it $700 or $800, and allow us a small commission, I will try and place the paper for you." "If you care to have us go to work on these terms, you write or wire me." On the 31st of August the defendant telegraphed plaintiff as follows: "If accepted now, a party is here, so we can send you four thousand dollars together with your note." On the 3rd of September they wrote plaintiff a letter, stating that they had telegraphed him. On October 3rd they telegraphed plaintiff: "Wire us your best offer, so we can advise a party who said he would hold his money till we heard from you."

On October 7th the defendant reported to plaintiff the sale, not revealing the fact that it had sold to itself, and the statement it sent the plaintiff indicated the exact reverse, one of the items being a charge against plaintiff by defendant for $35 for commission in making the sale. The answer of the defendant expressly avers a sale by it in accordance with the instructions of the plaintiff, and that the proceeds thereof were applied by it as directed by defendant, thus plainly claiming a sale to a third person. The answer stood in this form at the time of the second trial. It is urged that plaintiff's counsel, as early as the first trial, knew of the fact that defendant had itself bought the notes, and to make good the assertion we are referred to a letter offered in evidence by plaintiff's counsel, on the former trial as appears from the record before us on the former appeal, written by defendant to the makers of these notes, stating that defendant owned them. But an examination of the testimony of defendant's cashier on the former trial, in which he assumed to explain this letter, discloses the fact that such testimony might well have left on the minds of the counsel the impression that the defendant did not claim to the makers of these notes the ownership thereof, in a different sense from that in which it claimed to be the owner of all paper held by it for collection or as collateral.

In view of the letters, telegrams, and account of defendant, the ambiguous testimony of defendant's cashier in explaining the meaning of this last-named letter and the explicit statements in the answer, the claim that plaintiff should have discovered that defendant had violated its duty to plaintiff comes with ill grace from the defendant. We have, then, a case where plaintiff has been so misled by the conduct of the defendant as to mistake his right of action, and on this mistaken theory to frame his complaint. On the trial the defendant's cashier, without any objection to the evidence that it was not within the issue, or, indeed, on any other ground, testified to a fact which established the defendant's liability on another theory. This fact was not controverted,—was virtually admitted,—and the plaintiff asked leave to

amend his complaint to conform to such proof. Such an amendment is in furtherance of justice. To refuse to allow it is an abuse of discretion. Not a single reason can be adduced to support such denial. No possible prejudice could have resulted to defendant from the granting of it. Defendant would not have been surprised to its prejudice, as it did not then and does not now dispute the fact the allegation of which plaintiff sought to incorporate in the pleading by the proposed amendment. In denying the application for leave to amend, the court debarred the plaintiff from recovering the amount due the plaintiff from defendant. To have granted the motion would have resulted in no prejudice or injustice to defendant. The denial of it resulted in great injustice to the plaintiff, and when, in addition, we consider that defendant was responsible for the error of plaintiff in framing his complaint on a wrong theory, knowing all the time the facts which rendered it liable on another theory, the conclusion that the court should have allowed the amendment,—that it was in furtherance of justice,—is irresistible. Had the testimony of defendant's cashier been objected to and excluded, then a different case would have been presented. But the fact as to which plaintiff sought to have the complaint amended was proved without objection, and was practically admitted on the trial, and is expressly admitted in this court. The authorities all agree that an abuse of discretion in this class of cases is established by facts less favorable to plaintiff than the facts in the case at bar. *Cook* v. *Croisan*, (Or.) 36 Pac. 532; *Drew* v. *Hicks*, (Cal.) 35 Pac. 563-565; *Cooper* v. *Wood*, (Colo. App.) 27 Pac. 884; *Yetzer* v. *Young*, (S. D.) 52 N. W. 1054; *Jenkinson* v. *City of Vermillion*, (S. D.) 52 N. W. 1066; *Lefler* v. *Sherwood*, 21 Hun. 573.

We are not confronted with the question whether a party can by amendment change his cause of action from contract to tort, as the amendment proposed, while showing a conversion, would have left the complaint still standing as a complaint on contract, —the contract implied by the law,—as against one who has converted the property of another, to pay the value thereof in case

the owner of the property elects to waive the tort and sue in assumpsit. We have held that this waiver may be evidenced either by express language in the pleading to that effect or by the manner of stating the cause of action. *Braithwaite* v. *Aiken*, 2 N. D. 57, 49 N. W. 419; *Id.*, 56 N. W. 133. The manner of stating the cause of action in the complaint, as plaintiff proposed to amend it, would, had the amendment been allowed, have evinced a purpose to waive the tort, as there would have been in it no averment of a wrongful conversion, or any language characterizing the defendant's act as a tort. See *Goodwin* v. *Griffs*, 88 N. Y. 629-640.

We do not think that the proposed amendment substantially changed the nature of the plaintiff's claim, within the meaning of § 4938, Comp. Laws, permitting courts to allow an amendment on the trial, to make the pleading conform to the proof. *Smith* v. *Savin*, 141 N. Y. 315, 36 N. E. 338; *Culp* v. *Steere*, (Kan. Sup.) 28 Pac. 987; *Spice* v. *Steinruck*, 14 Ohio St. 213; *Esch* v. *Insurance Co.*, (Iowa) 43 N. W. 229. Indeed, it is not urged in this court by the respondent's counsel that the learned trial court did not possess power to grant the amendment. The whole of his argument was directed to the question of abuse of discretion, he insisting that a case of abuse had not been made out. We think otherwise, for the reasons already stated. It was not necessary for the plaintiff to pay or tender back the amount paid him by defendant. He was entitled to this sum, and more too. On the theory of a conversion, whether the tort was or was not waived, plaintiff had a right to recover from defendant the value of the property at the time of conversion, with interest, and, having received a portion of the value, he could recover the balance without first paying back the amount already received. He was not seeking to rescind a contract. He had never assented to a sale of the property by the defendant to itself at any price. We deem this point so clear that we dismiss it without further discussion, citing a single authority: *Greenfield Savings Bank* v. *Simons*, 133 Mass. 415. We do not think that plaintiff waived his

right to treat the act of the defendant as a conversion by bringing his action to recover on the theory of a sale by defendant as agent for plaintiff. Had he sued for the proceeds of a sale, on the theory that his instructions furnished the test of the amount he was entitled to recover, knowing full well that defendant had assumed to sell to itself, then it might be urged that he had waived his right to treat the defendant's act as a conversion. See *Terry* v. *Munger*, 121 N. Y. 161, 24 N. E. 272; *Braithwaite* v. *Aiken*, (N. D.) 56 N. W. 133. But plaintiff does not appear to have such knowledge at the time of commencing such action. Defendant's conduct would naturally create in his mind the contrary impression, and this would be strengthened by the language of the answer in the case.

It was urged on the argument that the order denying the motion for a new trial should be affirmed, for the reason that it appears that the notice of intention to move for a new trial was not served within the statutory time. But an examination of the record satisfies us that the time in which to serve such motion was extended by the court, and that the notice was served within the time as so extended. Nor do we think there is any force in the contention that the paper so served was not a notice of intention. It is true that it was in bad form, in that it embodied a notice, not only that plaintiff intended to move for a new trial on the grounds therein stated on a statement of the case, but that he would bring his motion for such new trial on to a hearing at a specified time and place. The notice of intention and the notice of motion are two distinct and utterly different notices, and it is not good practice to embrace both elements in one paper. Sections 5090, 5092, Comp. Laws. The notice of intention should not state when and where the motion for a new trial will be heard. As a general rule, the person who desires to make such motion is not in position to notice his motion for a hearing at the time he serves his notice of intention, for it often happens that at that time the bill or statement has not been settled.

The order is reversed, and a new trial is granted. All concur.

## ON REHEARING.

CORLISS, J. Counsel for defendant urges in his petition for rehearing that we have mistaken the particular amendment which the plaintiff sought to make on the trial. It is claimed by him that the plaintiff attempted to have his complaint amended, not in such a manner as to set up a conversion and then waive the tort, but so as to entitle him to recover of defendant such of the notes as were still retained by it, and the proceeds of such of the notes as had been collected by it. The fact that the defendant had illegally attempted to sell the notes to itself while acting as agent for plaintiff gave the plaintiff an option of three remedies. He might have sued as for conversion, or he might have waived the tort and sued on the theory of a sale, or he might compel the defendant to account for such of the notes as were still in its possession and the proceeds of the other notes collected by it. This latter remedy would be in equity. We will assume, in this discussion that defendant's counsel is correct in his assertion that the proposed amendment showed that it was this remedy to which the plaintiff desired to resort. The mere fact that by this amendment the plaintiff sought to change his action from one at law to one in equity is by no means decisive against the power of the court to make it. Unlike a motion to amend by transmuting an equity into a law case, the granting of it does not deprive the defendant of the right to a jury trial. When the action is transformed into an equity action, defendant has no right to a jury trial. The judge who has heard the evidence up to the time the amendment is allowed will alone hear the rest of the case, and decide the whole case as in other equity actions. And where, as in this case, there is no controversy about the facts, no right of the defendant to a jury trial is infringed, even by changing from equity to law, for there is no issue of fact for a jury to determine. Should a jury be called, the court would be compelled to direct a verdict one way or the other. The power of the court to amend the complaint on the trial to conform to the proof is not so limited by the statute that it cannot be exercised where the

amendment will change the action from law to equity. The language of the statute is that the amendment shall not "substantially change the claim." We do not think that the proposed amendment substantially changes the plaintiff's claim. The form of the action is altered. The recovery will be somewhat different. But both complaints rest ultimately upon the ownership by plaintiff of the notes in question. While we have been in doubt on this question of power ever since the argument of this case, yet, as counsel for defendant have all along conceded the power, not only on the argument, but also in their petition for rehearing, we will adhere to our original view on this question. The case of *Steamship Co.* v. *Otis*, 27 Hun., 452, strongly supports our conclusion on this branch of the case. See, also *Knapp* v. *Fowler*, 30 Hun. 512; *Beck* v. *Allison*, 56 N. Y. 366; *Davis* v. *Railroad Co.*, 110 N. Y. 646, 17 N. E. 733; *Bedford* v. *Terhune*, 30 N. Y. 453; *Dexter* v. *Ivins*, 15 N. Y. Supp. 495; *Coby* v. *Ibert*, 58 N. Y. St. 117, 25 N. Y. Supp. 998; *Flynn* v. *Westmayer*, 4 N. Y. Supp. 188. It is to be noticed that the statute declares that, to cut off the power to amend to conform to the proof, it is not enough that the cause of action is different. The claim itself must be changed, and that, too, in a substantial way. If in substance the two claims—the one set forth in the original and the one embraced in the amended complaint—are the same, the power to amend on the trial to conform to the proof exists. There has been a judgment rendered in this action in favor of the plaintiff, and it is a serious question whether he could bring a new action to compel defendant to account to him for the notes still in his possession, and for the proceeds of those collected, so long as such judgment should remain unreversed. It might with great and perhaps unanswerable force be urged that such judgment was a bar to such action. One of the tests by which to determine whether the complaint as amended sets forth substantially the same claim as that contained in the original complaint is whether a recovery upon the latter would have been a bar to a recovery upon the former. *Davis* v. *Railroad Co.*, 110 N. Y. 646, 17 N. E. 733. As

soon as plaintiff ascertained the fact that entitled him to the relief which he sought by his proposed amended complaint, he not only asked leave to amend, but offered to restore all moneys received by him in excess of the amount which it should be ascertained that the defendant had collected upon the notes. No tender of any specific amount was necessary. The plaintiff was not in position to know how much money he must return to defendant, for this would depend upon the amount collected by the latter upon the notes. It might appear upon the trial that defendant had collected more than the sum remitted to plaintiff. Plaintiff was under no obligation to tender back to defendant all that he had received, only to recover it back in the same action. The judgment in the case would have afforded the defendant ample protection. The court would have embodied in the decree, directing defendant to turn over to plaintiff such of the notes as it still had in its possession, a provision that this be done only on condition that plaintiff restore to defendant all moneys received from defendant over and above the amount collected by defendant, with interest. It is fair to the defendant's officers to say that it does not appear that plaintiff was induced to fix the price at which he was willing to sell because of anything said by them or any of them. He appears to have relied on his own judgment, and not to have been influenced in any manner by defendant's cashier, or by any other officer of the bank. Nor is there anything in the case to show that any of them attempted to influence him in fixing the price. This record does not, therefore, present to us the case of an agent betraying the confidence reposed in him by so moulding the mind of his principal as to subserve his own, instead of the principal's interest.

As we have reached the conclusion that the District Court had power to allow the amendment which counsel for defendant contends the plaintiff asked for, there remains nothing further to be said. The question of abuse of discretion we have discussed in the original opinion, and we adhere to the views there expressed. It follows that the petition for rehearing is denied.