## HARDMAN v. KELLEY.

1. Though certain defenses were by the court correctly stricken from an amended answer, as not conforming to the order allowing defendant to amend, the court should have permitted the insertion of such defenses on defendant's subsequent motion, made before the next term of court at which a trial could be had, where the defenses, if sustained, would have entitled defendant to judgment, and one of them would have been barred by a judgment in the action.

2. As, under the code system, defendant may plead as many defenses as he may have, the denial of a motion to amend an answer by inserting certain defenses because inconsistent with other defenses previously set up in the answer was a misuse of discretion, entitling defendant to a new trial.

3. A contract for the sale of land used the term "agent" in connection with defendant's name as vendor, and the words, "subject to the ratification of the owner of the land," but was made between defendant, "agent," and plaintiff, and signed with defendant's name, "by ————;" —defendant covenanting to convey in fee simple—and stipulated that, on plaintiff's failure to perform as vendee, he would be liable for any damages sustained by defendant; the sale not to be binding on defendant's part until receipt by him of the cash payments "in his office," and, "sale approved." Held, that the agreement was executed by defendant vendor individually and not as agent of the owner of the land.

4. In an action by plaintiff for breach of the contract, a deed from the owner to a third party, and a subsequent deed from the latter to defendant, together with a letter from the owner to his bank, di-

recting delivery of his deed to the third party on payment of a certain sum, offered by defendant as evidence of his ability to perform the contract, was admissable to disprove plaintiff's allegations of defendant's bad faith in entering into the agreement.

(Opinion filed July 6, 1905.)

Appeal from circuit court, Beadle county; Hon. CHARLES S. WHITING, Judge.

Action by J. C. Hardman against C. A. Kelley. Judgment for plaintiff, and defendant appeals. Reversed.

*Kelly & Chamberlain* and *A. W. Wilmarth,* for appellant.

*Wood & Fairbank* and *T. H. Null,* for respondent.

CORSON, P. J. This is an appeal by the defendant from a judgment in favor of the plaintiff for the sum of $1,000. The action was brought by the plaintiff upon an alleged contract entered into between the defendant and himself on the 22d day of July, 1902, and the plaintiff claims that the defendant agreed, by the terms of said contract, to convey to him a certain quarter section of land in the county of Beadle upon the payment of $2,720 as follows: (1) One Shire stallion, valued at $800; (2) the sum of $200 on demand; (3) the sum of $1,720, terms to be arranged, with interest at 6 per cent. per annum, payable annually on the 1st day of January of each year; and that the plaintiff thereupon paid to the defendant the sum of $180, and delivered to him a certain stallion, valued at $800, and that the plaintiff expended in the care and management of certain horses the sum of $20, making the $1,000. Plaintiff also claims $500 as damages for the loss of the use of the stallion, and for failure of the defendant to perform the contract on his part; that said contract was to be performed on January 1, 1903; and that it was further agreed that the

defendant should sell the above land for said plaintiff at $17 net per acre, and if said land should not be sold by January 1, 1903, the plaintiff should take the same at $15 per acre. It is further alleged by the plaintiff that he complied with the terms of said agreement on his part, but that the defendant did not sell the said land for the plaintiff before January 1, 1903, and that the plaintiff was ready and willing on the said day to take the said land for $15 per acre, and to arrange the terms of payment of balance due on said land, namely, $1,400, as was stipulated in said contract, and that said defendant has refused and neglected to carry out the terms of said contract, and has refused and neglected to deliver a deed to the said premises to said plaintiff according to the terms of said contract, and has refused and neglected to return to the plaintiff the payments made on the purchase price of said land, although often requested so to do.

After certain denials the defendant pleaded in his answer (1) that the plaintiff failed absolutely to carry out his part of the contract on January 1, 1903, although the defendant was able, ready and willing at said time to perform his part thereof; (2) that he failed on the 1st day of January or at any other time to make any tender of the balance of the payments due on the land described in the said contract, although the defendant, as agent of one D. M. Helfenstein, party of the first part in the contract set out, was on the 1st day of January, 1903, still is, and always has been ready and willing to convey the land to the plaintiff upon the plaintiff complying with the terms of the contract, and that the defendant was ready and willing to carry out the contract according to its terms at said date.

Upon the trial the defendant, a witness on his own behalf, was questioned as to the condition of the stallion at the time he received him. An objection to this question was sustained on the ground that there was no allegation in the answer showing a warranty, or any breach thereof. The defendant thereupon requested leave to amend his answer by alleging that the time the horse was received by the defendant in part consideration of his contract the plaintiff warranted him to be sound and all right, and a sure foal getter; that the horse was unsound and was diseased and of no value whatever; that the defendant relied upon said warranty, believing him to be sound and of the value of $800; that he is not now and was not then of the value of $800 or any other sum whatever. Leave was granted to the defendant to make this amendment upon terms, and the case was continued until the following term of court. The defendant thereupon served an answer in which he not only set up the warranty as to the condition of the horse, and the breach of the same, but further alleged that the contract entered into between the plaintiff and the defendant was rescinded by mutual consent, and that the defendant offered to restore to the plaintiff all the consideration he had received upon the contract. The plaintiff thereupon moved to strike from the proposed amended answer all allegations regarding the rescission of the contract by mutual consent, and all allegations in regard to tender of the horse and the money advanced on the said contract to the plaintiff, and all allegations relating to the offer to restore the plaintiff to his previous condition, and all allegations in the nature of a counterclaim alleged in said amended answer. This motion was granted by the court, and all of the answer except that relating to the

warranty and breach thereof was stricken from the answer,
for the reason that the said answer did not conform to the
order of the court made when granting leave to amend the
answer. Subsequently the defendant served notice of a mo-
tion for leave to amend the answer so as to include the allega-
tions relating to a rescission of the contract, and also setting up
a counterclaim. Upon the hearing this motion was denied by
the court for the reason (1) that he had previously granted
the motion to strike out these defenses from the answer; and
(2) for the reason that these defenses were inconsistent with
the other defenses previously set up in the answer.

It is contended by the appellant that the court, in denying
the defendant leave to amend his answer in the respects in-
dicated, abused its discretion, and prevented the defendant
from having a fair trial upon the merits of the case. We are
inclined to agree with the defendant in his contention. While
the court is undoubtedly correct in striking from the answer
served the two defenses indicated, for the reason that they did
not conform to the order made by the court in allowing the de-
fendant to amend, as made at the trial, still, when the motion
was made by the defendant for leave to insert these defenses
in his answer, we are of the opinion that the court should have
granted the same, as the motion was made some weeks prior to
the commencement of the next term of court at which a trial
could be had, and one defense, at least, was such as would have
been barred by a judgment rendered in the action, and the de-
fenses, if sustained, would have entitled the defendant to a
judgment in his favor. The view taken by the learned circuit
court, that the defenses sought to be interposed could not be
made for the reason that they were inconsistent with the prior

defenses pleaded, is not tenable.   This court held in the early case of Stebbins et al. v. Lardner, 2 S. D. 127, 48 N. W. 847, that, under the reformed system of pleading in force in this state, parties are allowed to plead any defense which they may have to the action, although such defenses are inconsistent; that under our code system a party may plead as many defenses as he may have to the action, whether the same are consistent or inconsistent.   In this case the court held: "Under the provisions of section 127, Rev. Code Civ. Proc., it is competent for a defendant to plead as many defenses as he may have, whether consistent or inconsistent with each other, and he cannot be required to abandon one defense in order to avail himself of another inconsistent defense; nor can he be compelled to elect as between inconsistent defenses, or be precluded from giving evidence under either."   While, in granting leave to amend pleadings, the court exercises a large discretion, yet that discretion should be exercised liberally in favor of granting such amendments, in order that the case may be fully tried upon its merits.   When, therefore, application is made for leave to amend by inserting an additional defense which a party may have to the action at a reasonable time before the time of the trial of the action, such amendment should be allowed upon such terms as the court may deem just to the adverse party.   In the case of J. I. Case Co. v. Eichinger, 15 S. D. 530, 91 N. W. 83, this court says:   "Under the system of pleading in force in this state, it is the duty of courts, in furtherance of justice, to exercise their powers liberally in permitting amendments to pleadings, in order that the real issues between the parties may be fairly tried."   The same view was expressed by this court in Yetzer et al. v. Young, 3 S. D. 263,

52 N. W. 1055, and in Jenkinson v. Vermillion, 3 S. D. 238, 52 N. W. 1066. And the same view is taken of the duty of the trial court by the Supreme Court of North Dakota in Martin v. Luger, 8 N. D. 220, 77 N. W. 1003, and in Anderson v. Bank, 5 N. D. 80, 64 N. W. 114, and by the Supreme Court of California in Drew v. Hicks, (Cal.) 35 Pac. 563. We are of the opinion, therefore, that the learned trial court, in denying the defendant's motion to amend, misused its discretion, for which the defendant is entitled to a new trial.

There are other questions that are likely to arise upon another trial, upon which we deem it proper to express an opinion at this time. The theory upon which the action was instituted and tried in the court below was that the contract entered into was a contract between the plaintiff and the defendant in this action. It is strenuously contended by the defendant that the action was improperly brought against the defendant and that the contract was a contract between the defendant, as agent of Helfenstein, the owner of the property and the plaintiff; but this contention is, in our view of the case, untenable. It is true, in the agreement the term "agent" is used in connection with the name of the defendant, as party of the first part, and the words, "Subject to the ratification of the owner of the land, and in case the sale is not approved by him, then, the cash payments and all the papers are to be returned to the proposed purchaser through the correspondent submitting the same," but the agreement was "made and entered into * * * by and between C. A. Kelley, agent, party of the first part, and J. C. Hardman, party of the second part," and that it is signed, "C. A. Kelley, by A. C. Gamble," and by "J. C. Hardman." There are numerous stipulations in the

agreement which are entirely inconsistent with the theory that the defendant was making the contract as the agent of Helfenstein. Among these stipulations are the following: The defendant, as party of the first part, "covenants and agrees to convey and to assure to the said party of the second part, in fee simple, clear of all incumbrances whatever, * * * by a good and sufficient deed," said described quarter section of land. "It is also agreed by and between the parties of this contract that in case the purchaser refuse to carry out the provisions of the contract, he will also be liable for any damages said C. A. Kelley sustains over and above the cash payments made." It is further stipulated that: "It is hereby understood that this sale is not binding on the part of the said C. A. Kelly until the cash payments have been received by him in his office at Huron, South Dakota, and sale approved." Then comes the clause: "It is further agreed that C. A. Kelley sell above land to net said Hardman $17 per acre and if said land is not sold by January 1st, 1903, Hardman takes the same at $15 per acre." It is quite clear, therefore, that the agreement was an agreement of the defendant, and that his failure to comply with the terms of the agreement as alleged, and his failure to return the property received under the agreement as alleged, assuming that the plaintiff complied with the terms of the contract on his part, clearly entitled the plaintiff to recover in this action such damages as he was able to show he sustained by reason of defendant's failure to comply with the agreement on his part. We are of the opinion, therefore, that the court was clearly right in construing the agreement as the agreement of the defendant, and not of Helfenstein. On the trial of the action the defendant sought to introduce in

evidence, for the purpose of showing his ability to comply with the contract on his part, a deed from Helfenstein and wife to Conkey, executed in June, 1902, prior to the execution of the agreement in controversy, and a deed from Conkey to the defendant, executed at a later date, for the property in controversy, together with a letter of instructions from Helfenstein to his correspondent bank at Huron, stating that the deed from himself and wife to Conkey should be delivered upon the payment of $2,000. This evidence was objected to as irrelevant, immaterial, and not competent under the issues in this case. We are inclined to take the view that these deeds and correspondence were admissible for the purpose for which they were offered, namely, to show that the defendant could have taken from escrow in the bank the deed to Conkey upon the payment of $2,000, and that that deed, when recorded, taken in connection with the deed from Conkey to the defendant, would have enabled the defendant to convey a valid title to the property to the plaintiff. In other words, it would disprove certain allegations of plaintiff, namely the bad faith of the defendant in entering into the agreement with the plaintiff. The other question, arising upon the instructions of the court, and the admissibility of certain evidence offered in the case, may not arise upon another trial, and hence it is not necessary to express any opinion upon these questions at this time.

The judgment of the court below is reversed and a new trial granted.