## W. L. BENNETT v. S. L. GLASPELL.

### Opinion filed March 14, 1906.

**Vendor and Purchaser — Compensation in Lieu of Forfeiture.**

1. Under section 4970, Rev. Codes of 1899, one who has subjected himself to a forfeiture by committing a breach of contract may by making compensation be relieved therefrom, when the breach is not grossly negligent, willful, or fraudulent.

**Same — Relief from Forfeiture.**

2. Upon the facts stated in the opinion, the plaintiff is entitled to be relieved from the forfeiture upon which the defendant relies to defeat his action for specific performance.

**Same — Grounds of Forfeiture Must Be Those of the Contract.**

3. The grounds upon which a contract may be forfeited must be contained in the contract; and a contract will not be extended by construction to include other grounds than those specified in it. Following Coughan v. Larson.

**Same — Fraud, Unless Affirmed, Is a Ground for Rescission.**

4. Fraud inducing the execution of a contract, and by reason of which consent is not free, renders it voidable, and, unless the contract has been affirmed, is available as a ground for rescission or as a defense against its enforcement.

**Same — Taking Benefits Under Contract With Knowledge of Fraud Affirms It.**

5. One who, with full knowledge of the facts which entitle him to rescind a contract or defeat its enforcement, voluntarily takes benefits under it, thereby affirms it; and he cannot thereafter assail its validity.

**Specific Performance — Parties.**

6. One who is not a party to a contract and disclaims any interest in it is not a necessary party plaintiff in an action to enforce it.

Appeal from District Court, Foster county; *Burke, J.*

Action by W. L. Bennett against S. L. Glaspell. Judgment for plaintiff. Defendant appeals.

Modified.

*C. B. Craven* and *E. H. Wright,* for appellant.

An agent to purchase cannot buy from himself, and an agent to sell cannot be himself the purchaser without his employer's consent. Clendenning v. Hawk, 10 N. D. 90, 86 N. W. 114; Anderson v. First National Bank, 5 N. D. 80, 64 N. W. 114; Dutten v. Willner, 52 N. Y. 312; Webb et al. v. Marks, 51 Pac. 518.

The rule is not relaxed when the authority to sell is for a fixed price. Ruckman v. Bergholz, 37 N. J. Law, 437; Colbert et al. v. Shepherd, 16 S. E. 246; Webb v. Paxton, 32 N. W. 749; Jensen et al. v. Williams, 55 N. W. 279; Rennick v. Butterfield, 64 Am. Dec. 316; Tisdale v. Tisdale, 2 Sneed. 596.

A partnership is liable for any loss or injury caused to one not a member of the firm by any wrongful act or omission of a party in the ordinary course of the business of the firm or with the authority of the copartnership. Brundage v. Mellon, 5 N. D. 72, 63 N. W. 209; 22 Am. & Eng. Enc. Law, 166; Wiley v. Stewart, 122 Ill. 545, 14 N. E. 835; Wolf v. Mills, 56 Ill. 360; Chester et al. v. Dickerson et al., 54 N. Y. 1; Loomis v. Barker, 69 Ill. 360; Tenney v. Foote, 95 Ill. 99; Castle et al. v. Bullard, 23 How. 172, 16 L. Ed. 424, 64 U. S. 172; Blight's Heirs v. Tobin, 18 Am. Dec. 219; Nicholsen v. Janeway, 16 N. J. Eq. 285; sections 4394, 4395, 4340, Rev. Codes 1899.

*T. F. McCue, John Knauf* and *S. E. Ellsworth,* for respondent.

Where time is not of the essence of the contract, default in a condition may be cured by a payment, or offer of payment within a reasonable time after the performance was due. Crittenden v. Drury, 4 Wis. 229; Hall v. Rawson, 5 Wis. 206; Butler v. Archer, 41 N. W. 309; Volz v. Grummett, 13 N. W. 814; 4970 Rev. Codes 1899; Pier v. Lee, 86 N. W. 642; Barnes v. Clement, 81 N. W. 301.

Hoopes has no interest in the subject matter of the contract and was not a proper party to the action. His remedy, if any, would be an action for an accounting. Davenport v. Buchanan et al., 61 N. W. 47; Bates v. Babcock, 30 Pac. 605; Richard v. Grinnell, 63 Iowa, 44, 18 N. W. 668; Newell et al. v. Cochran et al., 43 N. W. 84.

No person is a necessary party to a suit in equity although he may have an interest in the subject matter, if such interest cannot be affected by a decree. 16 Enc. Pl. & Pr. 182.

Parties to a contract are the only proper parties to a suit for its performance. Willard v. Tayloe, 8 Wal. 557, 19 L. Ed. 501; Moulton v. Chafee, 22 Fed. 26.

The presence of a party having an interest that is neither recognizable nor enforcible, and against whom no relief is asked by either party, is entirely unnecessary and improper. Hoskins v. Dougherty, 69 S. W. 103; Stanton v. Singleton, 54 Pac. 587;

Burril v. Gaist, 34 A. 436; Denneston v. Hougland, 67 Ill. 265; Brown v. Ritter, 26 N. J. Eq. 456; Robinson v. Robinson, 116 Ill. 250, 5 N. E. 118; Washburn, etc., Mfg. Co. v. Chicago, etc., Fencing Co., 109 Ill. 71.

YOUNG, J. This action was commenced on March 6, 1905, to compel the specific performance of the defendant's written contract wherein he agreed to sell and convey to the plaintiff 640 acres of land situated in Foster county. The purchase price, $8,764, was to be paid on what is commonly termed the "crop payment plan." The entire sum was to be paid not later than November 1, 1908, and the plaintiff had the privilege of paying all or any part of the consideration at any time previous to that date. Deferred payments bore interest at 7 per cent per annum, and the interest was due and payable on November 1st of each year. The contract required the plaintiff to sow, harvest and thresh the crops at his own expense, and immediately after threshing the same, but not later than November 1st in any year, * * * to deliver in the elevator or in the cars at the nearest station, to the order and in the name of the first party or his duly authorized agent, one half in kind, and as it comes from the machine of all the wheat or other grain grown upon said land ,which grain or produce shall be sold by the first party, or his duly authorized agent, and the proceeds applied first, toward the payment of interest then due, and the balance toward the purchase price of said premises then remaining due and unpaid under this agreement." The contract authorized the defendant, at his election, to declare the contract forfeited by giving notice in the manner therein specified in case the plaintiff defaulted in delivering the grain, or in making the payments for twenty days after the grain was threshed or after the payments were due.

The complaint alleges full performance by plaintiff of the conditions of the contract for the years 1902, 1903 and 1904, and sets forth the several payments made thereon, and the date of each payment. It also alleges that in October, 1904, the plaintiff notified the defendant that he desired to pay all that remained of the purchase price and to procure a deed; that on November 21st, thereafter, he deposited the sum of $6,350 in the First National Bank of Carrington to be paid to the defendant upon receipt of a deed, and caused defendant to be notified of such offer; that on November 28th he tendered said sum to defendant, which was refused; that on December 10th he tendered the sum of $6,400; that defendant

refused to accept payment, and refused and still refuses to execute and deliver a conveyance. The plaintiff also alleges that he is still ready, willing and able to make full payment, and that he has brought into court and deposited for that purpose the sum of $6,600. The defense set up in the answer is that the defendant effectually canceled and annulled the contract on November 12 ,1904, by serving a notice of forfeiture on that date which declared the contract canceled and terminated upon the following grounds: (1) Plaintiff's failure to deliver a full one-half of the grain grown in 1904; and (2) fraud and deceit inducing the execution of the contract. Judgment was entered for plaintiff and defendant has appealed therefrom and demands a review of the entire case in this court under section 5630, Rev. Codes 1899.

As to a large number of collateral facts, the testimony is contradictory, and in many respects utterly irreconcilable. The facts, however, which in our opinion control the case, are not in conflict. The execution of the contract is admitted. There is no dispute as to the amounts which have been paid upon it, or as to the good faith and sufficiency of the several tenders, or that the amount deposited in court fully covers the balance due upon the contract. The defendant urges three grounds in this court in support of his contention that specific performance should not be decreed. He contends (1) that the contract was annulled on Novembed 12, 1904, by the service of the declaration of forfeiture; (2) that he was induced to enter into the contract by fraud and deceit (this being urged as a defense to the action as well as one of the grounds of forfeiture), and (3) that the action is not prosecuted by the real party in interest. We are agreed that defendant's contention cannot be sustained upon any of the several grounds upon which it is based.

The attempted forfeiture cannot be upheld upon either of the two grounds set forth in the notice. As to the first ground it may be admitted that there was a breach in plaintiff's failure to deliver the full one-half of the grain within the time specified in the contract. It is clear, however, that the breach was not grossly negligent, willful or fraudulent and it was not attended or followed by any injury which is not fully compensated by the subsequent payment of interest on the amount unpaid. The land in question is near Carrington. The plaintiff resides at Jamestown. It appears that in the year 1904, the land was occupied by one Fritz, who farmed it upon shares as plaintiff's tenant. Under the terms

of the lease plaintiff was to receive one-half of the crop, which was the same amount the plaintiff was required to deliver to the defendant under his purchase contract. It does not appear just when threshing was commenced, but it was not finished until October 30th. Fritz reported that by machine measure the total number of bushels of grain threshed was as follows: Barley, 2,160 bushels; wheat, 5,205 bushels; oats, 2,394 bushels; flax, 901 bushels. On September 21st the plaintiff sent a draft for $273.72 to the defendant as the proceeds of a shipment of barley. This was accepted and indorsed upon the contract. In the latter part of September the defendant appointed one C. H. Olson as his agent to look after the shipment and sale of the half of the grain which the contract required to be delivered to him. Olson's appointment as agent was contained in the following letter signed by the defendant and addressed and delivered to the plaintiff: "Mr. W. L. Bennett. Dear Sir:—I want the balance of the grain in section 35 shipped in my name and the shipping bills turned over to Mr. C. H. Olson. You will consider him as my agent and furnish him information as to grain threshed and when you ship." Olson's agency authorized him to sell the grain and remit the proceeds. In pursuance of this agency he turned over to the defendant from the proceeds of shipments $521.14 on October 10th, and $1,309.40 on October 22d; and these amounts were indorsed upon the contract as of the dates above stated. Early in November Olson received a draft for $230.16, being a balance upon a previous shipment. On November 10th he received from the plaintiff the sum of $725.68. At that time all of the grain had not been delivered either in the cars or to the elevator. The sum last named was paid by plaintiff as full settlement for the amount not delivered and in full settlement for defendant's share of the crop of 1904. This latter payment, with the amounts which Olson had previously received, amounted to $2,786.38, and he wrote out and delivered to plaintiff the following receipt: "Received of W. L. Bennett two thousand seven hundred eighty-six 38-100 dollars, being in full settlement for balance one-half of crop for year 1904, Sec. 35-146-66. S. L. Glaspell. C. H. Olson, Agent." The settlement was made at Carrington and was based upon the report of Bennett's tenant, Fritz, as to the amount of grain threshed, the reports of shipments and sales, and a measurement of the grain still on hand on the farm, in which Olson participated. On the following day Olson received by mail the notice of forfeiture which the defendant had prepared, and

pursuant to the latter's instructions, caused it to be served. At this time he had in his possession the draft for $230.16, and the $725.68 which was paid upon the settlement. These sums were subsequently tendered to defendant and rejected. Plaintiff also refused to accept a return of these payments, and during the progress of the trial, the total amount represented by these payments, $955.84, was deposited in court for the defendant's use and subject to the order of the court.

The defendant's claim that all of his share of the grain was not delivered or paid for rests upon the testimony of Fritz, who was a witness for defendant. He testified in substance that a quantity of grain consisting of 75 bushels of oats and about 300 bushels of barley was used for feed upon the farm; that this and also 92 bushels of wheat and 72 bushels of flax was not taken into account or included in the settlement. The defendant contends that Olson exceeded his authority in making the settlement and that it is not, therefore, binding upon him; further that Olson was guilty of duplicity in making it and in doing many other things in connection with his agency. In our opinion these questions are not vital. It may be admitted that there was a shortage in the quantity of grain delivered and paid for; further, that Olson exceeded his instructions in making the settlement, and that he was otherwise unfaithful to the instructions of his principal. The controlling question, in determining the effect of the attempted forfeiture, is whether the plaintiff's failure to comply with the contract in the particular complained of, was grossly negligent, willful or fraudulent. Section 4970, Rev. Codes 1899, provides that: "Whenever by the terms of an obligation a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty." That the plaintiff is entitled to be relieved from the alleged forfeiture under the equitable rule announced in the above section is, we think, apparent from the facts already stated. The evidence shows that at all times he desired to fulfill the contract. The contract required him to deliver one-half of the grain in the defendant's name or the name of his duly authorized agent. The defendant appointed Olson, stating in his letter to plaintiff, "you will consider him my agent." Thereafter the plaintiff dealt with Olson as one having full

authority. At the time the settlement was made he had turned over to him grain from which the latter had realized $2,050.70, and $1,830.54 of this had been turned over to the defendant who indorsed it upon the contract and still retains the same. The quantity of grain not included in the settlement is not large and considering the manner in which the amount had to be determined it is fairly certain that the omission was not intentional. In making the settlement the plaintiff met and accepted the terms offered by defendant's agent, relied upon his authority to make it, and in doing so he acted in good faith. A forfeiture under these circumstances would be exceedingly inequitable and cannot be sustained.

As to the second ground set out in the notice of forfeiture, i. e., fraud and deceit inducing the execution of the contract, it is sufficient to say that it is not named in the contract as one of the grounds upon which it may be forfeited. Forfeitures are sustained only when the parties have contracted therefor, and the terms of a contract will not be extended to sustain forfeitures upon other grounds than those provided for in the contract. See Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088, and authorities cited. The remedy of one whose assent to a contract was not free because of fraud is not obtainable by forfeiture (for that assumes that the contract is valid), but is secured through a rescission of the contract or defense against its enforcement. This ground was not, therefore, available for forfeiture, and the defendant has not attempted to rescind.

This brings us to his second proposition, which is presented in a supplemental brief, and that is that in any event fraud and deceit in procuring the execution of a contract is available as a defense against its enforcement, and for that reason specific performance should not be decreed in this case. As applied to contracts which are voidable for fraud and which have not been affirmed, the rule is, we think, as contended for. But under the facts of this case it has no application. The defendant, with full knowledge of the facts upon which he relies to sustain his claim of fraud, accepted and retained and still retains benefits received under it. By doing this he affirmed it and cannot therefore now assail its validity. See sections 3842, 3843, 3864 and 3865, Rev. Codes 1899. The alleged fraud upon which the defendant relies, rests upon his claim that one W. E. Hoops, an attorney at law, who was his agent in negotiating the sale to plaintiff, without defendant's

knowledge, authority or consent, made an oral arrangement with the plaintiff for a half interest in his purchase, whereby they became and have since continued to be partners. There is a sharp conflict in the testimony as to whether defendant knew of this agreement when he made the sale, or for a long time thereafter. Hoops testifies positively that the agreement was made with the full knowledge of defendant, and in fact at his suggestion as a means of effecting the sale to Bennett. Olson testified to a number of conversations with defendant in which the latter admitted that he knew of the relation existing between Hoops and Bennett; and there is some documentary evidence which in a measure corroborates the testimony of these witnesses. What the fact is we shall not attempt to determine. It is not necessary. The most that defendant claims is that the contract was voidable, and in doing so he does not claim that there was either actual fraud or injury. The defendant admitted in his testimony that no injury resulted, but that on the contrary the agreement between Hoops and plaintiff was of material aid to the latter in carrying out the contract. Neither does the defendant claim that he was influenced in any way to his prejudice or otherwise by the alleged failure of his agent to disclose the fact of the agreement.

The sale was in fact made by the defendant personally. He fixed the price and terms of sale, and the contract was written and signed by him personally. The relation of Hoops to the sale was merely that of a real estate broker without authority to make a contract for his principal. To sustain his contention that the contract is voidable and that he may defend against its enforcement, defendant relies upon the doctrine laid down in Anderson v. Bank, 5 N. D. 80, 64 N. W. 114; Clendenning v. Hawk, 10 N. D. 90, 86 N. W. 114, and similar cases, and the rule which is stated in Pomeroy on Equity Jurisprudence, section 959, in the following language: "In dealing without the intervention of his principal, if an agent for the purpose of selling property for the principal purchase it himself, or an agent for the purpose of buying property for the principal buys it from himself, either directly or through the instrumentality of a third person, the sale or purchase is voidable. It will always be set aside at the option of the principal. The amount of consideration, the absence of undue advantage, or other similar features, are wholly immaterial. Nothing will defeat the principal's right of remedy except his own con-

firmation after full knowledge of all the facts." To what extent, if at all, the doctrine announced in the foregoing rule and the cases referred to is applicable to this case we need not determine. It may be assumed that Hoops concealed his relation with Bennett from the defendant, and that this fact alone gave the defendant the right to disaffirm the contract at his option. This, however, avails him nothing, for the record shows that prior to the commencement of this action he elected to affirm the contract. On October 22, 1904, he received from Olson $1,309.40, knowing that it was derived from a sale of the crops grown under the contract. He admitted in his testimony that when he received this payment he had full knowledge of the agreement between his agent Hoops and the plaintiff. With that knowledge he accepted the money and still retains it. This was an unequivocal affirmance of the contract, and he cannot therefore now challenge its validity.

The contention that the record shows that the plaintiff is not the real party in interest is without merit. This claim is apparently based upon the assumption that Hoops and plaintiff together made the purchase from defendant and that Hoops should therefore be made a party. This is erroneous. The defendant's contract is with plaintiff only. Hoops is not a party to it. He has no rights under the contract, and upon the witness stand expressly denied having any interest in it. His rights, whatever they are, rest upon his oral agreement with the plaintiff which is entirely distinct from the contract in suit. The trial court found the balance due upon the contract was $6,549.10, in addition to the $955.84 paid into court by Olson, or $7,504.94 in all, and this sum is conceded to be correct. Through what is admitted to be an error in fixing the amount to be paid to the defendant from the money deposited in court, upon the execution of the deed by him, the trial court directed that the $955.84 paid to Olson and refused by defendant and later deposited in court should be deducted from the above sum. This was error. The defendant is entitled to the full amount due upon his contract, to wit, $7,504.94; otherwise, there is no complaint as to the judgment.

The trial court will make the correction above indicated, and, as corrected, the judgment will be affirmed. All concur.