GOLDEN VALLEY LAND & CATTLE COMPANY, a Corporation, v. JOHN JOHNSTONE and Carrie Johnstone, By J. A. Miller, Her Guardian *ad Litem*.

(141 N. W. 76.)

1. Plaintiff and defendants entered into a preliminary executory contract for the exchange of real property, by the terms of which defendants were to pay the difference in the valuations fixed in the contract. The contract was entered into the 18th day of January, 1906, and provided for the exchange of properties before April 1, 1906, and also for the execution of formal contracts, and that on the delivery of such contracts by the respondent, appellants were to convey the real property agreed by them to be conveyed, to respondent. The preliminary contract also contained other requirements of the appellants. Respondent prepared the formal contracts and submitted them within the time named, and on various other occasions, to the appellants for execution. They, on each occasion, refused to execute, giving as their only reason the fact that the records did not show title to the land which was to be conveyed by respondent, to be in respondent. In fact respondent held such land only on an executory contract which provided that it might secure deed to any quarter section of a large amount covered by such contract, on payment of $3 per acre therefor. Respondent informed appellants of this fact, and that it would procure a deed whenever necessary under the terms of their contract. Respondent repeatedly urged appellants to perform as required by the terms of the preliminary contract, but appellants totally failed to comply with any part of the terms thereof. They never paid anything on the contract; they never transferred their property, and never executed the permanent contracts called for, but entered into possession of the land and retained possession until this action was brought to quiet title. It is *Held:*—

**Executory contract—real estate—good faith—vendor—vendee—performance—default—justification.**

(1) That as a general rule when a contract is entered into in good faith, the vendor having an estate or interest in the land contracted to be conveyed in the future, it is not necessary that he be actually in a situation to perform at the time the contract is made; that the most that is required of him is that he be able to perform when the vendee has a right to call upon him for performance.

(2) That appellants were totally in default, and that the court will not grant specific performance, as demanded in their answer, as against respondent; and that the excuse offered by appellants for their refusal to perform in accordance

Note.—On the question whether fraud may be predicated of misstatement as to title to real property, see notes in 28 L.R.A.(N.S.) 202, and 39 L.R.A.(N.S.) 1140.

with the terms of the preliminary contract furnished no justification for their default.

**Representations — fraud — pleading — title.**

2. This court does not determine whether a certain circular, advertising lands for sale by respondents, seen by appellants before entering into the contract named, which circular stated that the title was perfect and held under only one conveyance from the government, constituted fraud on the appellants, because, even though they bought on the strength of such representation, fraud was not pleaded, and the record shows that plaintiff was in position at the time designated by the contract to convey merchantable title to defendants had they put themselves in position to demand or receive it.

**Contract — specific performance — additional acts.**

3. The appellants having been given every opportunity to comply with the terms of their contract, and having never made any attempt to do so, but rather having attempted to cast all the burdens on the respondent and make it take all the risks involved on both sides of the transaction, and having waited until after a material increase in the value of the property to be conveyed to them, before seeking to be relieved from the terms of the contract, and having demanded additional acts on the part of respondent never contemplated, or provided for in the contract, are not in position to maintain specific performance as against respondent.

**Judgment — use and occupation — possession.**

4. The trial court gave judgment against appellants for $3,000 for the use and occupation of respondent's land while in possession. This judgment is modified and reduced to the sum of $2,185, which, in view of the unsatisfactory condition of the evidence on the subject, is the most this court finds the respondent entitled to recover.

Opinion filed March 18, 1913.  On petition for rehearing, April 16, 1913.

Appeal from a judgment of the District Court for Billings County, *Nuchols*, J.

Judgment affirmed as modified.

This action was brought in 1907 to quiet title to sec. 13, in township 138, North of range 106 West.  The complaint is nearly in the statutory form, but alleges that the defendants were, at the commencement of the action, in bad faith, without right, in possession and occupation of the premises, and claimed, in bad faith and without right, some estate or interest therein, adverse to plaintiff; and it sets out the

value of the use and occupation thereof during the time the defendants had been in possession; and, in addition to the statutory form of the prayer for relief in such cases, asks judgment for the value of the use and occupation.

The answer, so far as needs be noticed, alleges that plaintiff and defendants entered into a written contract in January, 1906, under the terms of which plaintiff sold the defendants the real estate described, for the sum of $8,000, payable under certain terms and conditions set forth in the contract; that the defendants have performed all of the conditions by them to be performed, as set forth in the contract, except as prevented by plaintiff. It alleges that the contract is still in full force and effect, and has never been cancelled, and that the defendants are, and always have been, ready and willing to perform their part of said contract, and to pay the amount therein required by them to be paid; and that their possession is lawful. The answer also contains a paragraph alleging such contract to be ambiguous in that, for some time prior to January, 1906, the defendant Carrie Johnstone was the actual and record owner of certain described property in the city of Sioux Falls, in the state of South Dakota, and is still the owner thereof, except as such ownership is qualified by the provisions of the contract referred to; and that, under such contract, the defendants agreed to convey the Sioux Falls property as a portion of the purchase price for sec. 13, in lieu of the sum of $4,200; that immediately after the execution of the contract referred to, the defendants took possession of section 13, and have remained in open and actual possession ever since, and put the plaintiff in possession of the Sioux Falls property; and that plaintiff had entered into possession thereof, and has, ever since that date, collected the rents and profits therefrom. It contains also a denial that the value of the use and occupation of sec. 13 is the sum alleged, but that it does not exceed $500 per annum. The prayer for relief demands that defendants be permitted to pay plaintiff the purchase price of sec. 13, and that they have specific performance as against the plaintiff as to such section; and that the title thereto be quieted in defendant. At the time the answer was served some of the payments were not due, and the time had not arrived when a deed from plaintiff was due.

The facts, as far as material to a decision, are as follows: The

defendants, John Johnstone and Carrie Johnstone, his wife, lived at Sioux Falls, South Dakota, and, through the agency of one Murphy, a soliciting agent for the plaintiff, at Sioux Falls, entered into a preliminary contract with the plaintiff as follows:

This agreement made and entered into this 18th day of January, 1906, by and between Golden Valley Land & Cattle Company, of Ramsey County, Minnesota, party of the first part, and John Johnstone, of Minnehaha county, South Dakota, party of the second part,

Witnesseth, That the said party of the first part in consideration of the covenants and agreements of said party of the second part, hereinafter contained, agrees to sell and convey unto the said party of the second part or his assigns, by warranty deed upon the prompt and full performance of said party of the second part of this agreement, the following described premises situate in the county of Billings, in the state of North Dakota, to wit: All of section thirteen (13), township one hundred and thirty-eight (138), range one hundred and six (106), containing six hundred and forty acres (640) more or less, according to the government survey thereof. And the said party of the second part, in consideration of the premises, hereby agrees to pay said party of the first part as and for the purchase price of said premises, the sum of eight thousand dollars ($8,000) on the following terms: The party of the second part agrees to convey by warranty deed, free of encumbrance, the following property situated in the city of Sioux Falls, South Dakota: Lot thirteen (13), block fifty-one (51), Gales Sixth Addition to the city of Sioux Falls; lot one (1), block six (6), Summit Addition to the city of Sioux Falls.

Consideration forty-two hundred dollars ($4,200).

The party of the second part further agrees to deed his property to first party when first party delivers to second party contracts covering above-described land as follows: One contract covering the E. ½ of section thirteen (13) township one hundred thirty-eight (138), range one hundred and six (106), showing a balance due of one thousand and three hundred dollars ($1,300) payable on or before four (4) years with 6 per cent interest; and one contract covering the W. ½ of section thirteen (13) township one hundred thirty-eight (138), range one hundred and six (106) showing a balance of twenty-five hundred

dollars, ($2,500) payable in five (5) annual payments and drawing 6 per cent interest.

Provided, However, that in case the party of the second part is unable to secure two or three homesteads in the immediate vicinity of the above-described land, then in that case the party of the second part is to have the privilege of selecting land of equal value similarly located, containing the same number of acres, at the same price, or at such price as may be agreed upon by both parties to this agreement.

Party of the second part agrees to pay all taxes that may hereafter become due upon said premises. But should default be made in the payment of said several sums of money, or any or either of them, or any part thereof, or in the payment of interest or taxes or any part thereof, or in any of the covenants herein to be by said party of the second part kept or performed, then this agreement to be void, at the election of the said party of the first part, time being the essence of this agreement.

It is hereby agreed that any moneys heretofore paid on this contract shall be treated as settled damages for breach thereof, and that under such default said party of the first part is to have possession of said premises. The conditions of this contract shall bind the heirs, executors, administrators, and assigns of each party hereto.

In Witness Whereof, said parties have hereunto respectively set their hands and seals the day and year first above written.

Golden Valley Land & Cattle Co.,<br>
D. J. McMahon, Sec.

John Johnstone.

Carrie Johnstone.

Papers to be exchanged on or before April 1, 1906.

No money was paid on the transaction. In March, 1906, plaintiff prepared, executed, and sent to Murphy, at Sioux Falls, contracts to take the place of the preliminary contract. They were taken to the defendants by Murphy to secure their signatures, and they were asked to sign them. Murphy was then informed by defendants that they would not sign them, because the abstract did not show that plaintiff had any title to section 13. No objection was made to the form or terms of the contracts presented, either at this time or any other time,

by the defendants. The contracts were presented to the defendant John Johnstone, and his signature requested several times, until February, 1907, when they were sent to a bank at Beach, North Dakota, near which place defendants were then residing. Johnstone was notified that they were in the bank, and that he could go there and sign them. The bank was given instructions, and also notified him of the contracts being in its hands. He again refused to execute. On all these occasions the reason given for the refusal, and the only reason, was that the plaintiff did not have record title to section 13. A voluminous correspondence was conducted in the meantime between the parties; and their letters are in evidence, showing the fact stated to be the only reason assigned by Johnstone for refusing to execute the new contracts, or to make a deed of the Sioux Falls property and to make the payments called for. During all this time plaintiff was seeking to carry out the terms of their contract, and to have the defendants do likewise. Plaintiff, in fact, held the land on contract from a third party, which contract provided that plaintiff could secure title to any quarter section of a large body of land, including section 13, on payment of $3 per acre. They informed the defendants, on different occasions, of the terms of their contract, and that they would produce a warranty deed as contemplated, when defendants had complied with the terms of the contract on their part. It is unnecessary to set out the correspondence in full, further than to say that, on April 18, 1907, the following letter was written to and received by Johnstone:

April 18, 1907.

Mr. John Johnstone,
        Beach, N. D.
Dear Sir:—

Referring further to your letter of April 10th, we thought best to inclose you a copy of the contract which we hold with you. You will note, upon reading this contract, that we made no agreement to show title to this land in ourselves, and we have attempted to comply with all the requirements of this contract. If you do not believe it, present it to some attorney for his opinion.

Believing that you were entitled to know what title we have on this land, we are herewith inclosing to you a letter from the Missouri Slope

Land & Investment Company, signed by the Secretary and Manager, Mr. H. A. Hunter, stating that the land is owned by his company in fee simple, and was purchased by our company, and that our contract is in good standing, everything being paid up to date that is due upon it. This certainly ought to be satisfactory to you. In any event it is all that we have to offer.

This transaction and one other have been more trouble and annoyance to us than all the lands that we have sold in Golden Valley. If you are ready to comply with the requirements of this contract, copy of which we inclose to you, we will forward papers in accordance with same; otherwise we will have to take steps to cancel the agreement, as we cannot and will not let this matter drag along in the shape it is any longer.

We will expect an early reply from you in reference to this proposition.

In reply to the letter of April 18th, Johnstone wrote the plaintiff, refusing to execute the contracts, again giving as the reason that plaintiff did not have the required title to sec. 13. This resulted in the service on the defendants, John Johnstone and Carrie Johnstone, on the 11th day of May, 1907, of a notice, in due form, that they had defaulted in the terms of their contract, and that the same would be canceled at the expiration of thirty days after such service; and on the 11th of June, defendant John Johnstone was notified by letter that the time had expired under such notice, and that such contract was null and void for failure, on the part of defendants, to fulfil its provisions. Whereupon the defendants applied to the judge of the district court for an order enjoining the cancelation or foreclosure of the contract,—we suppose on the theory that it was, in effect, a mortgage,—and requiring any further steps to be taken in court. The application was granted. Thereupon this action was brought.

On trial, judgment was rendered in plaintiff's favor, canceling the contract between the parties, and holding it null and void, and that neither of defendants had any estate or interest in or lien or encumbrance on such land, and enjoining them from interfering with the rights of plaintiff therein, and awarding the plaintiff the sum of $3,000 for the value of the use and occupation thereof, and for costs and dis-

bursements. From such judgment this appeal is taken. We may add that defendants went into occupation of section 13 after having refused to execute the contracts provided for; that the plaintiff has never been in possession of the Sioux Falls property, but that the rents accruing thereon after the execution of the preliminary contract were paid to and held by Murphy, by direction of the defendants; that the defendants have failed to pay the taxes on section 13, as well as upon the Sioux Falls property, and have cropped various amounts on section 13 from 1906 to the time of the trial. The defendant Carrie Johnstone became insane in the fall of 1906, and was thereafter adjudged insane, and it is claimed by plaintiff that this contract cannot be specifically enforced, because of lack of mutuality, and because of the inability on the part of defendants to perform, and because the title of the Sioux Falls property was in the name of Carrie Johnstone, who could not convey, nor anyone for her, by reason of her insanity. This, among other questions raised, need not be considered.

*Heffron & Baird* and *J. A. Miller,* for appellants.

The defendants had the right to rescind the contract for fraud, or to stand on the same and wait for plaintiff to perform as per contract. Haffey v. Lynch, 143 N. Y. 241, 38 N. E. 298; Curtis v. Gutz, 90 Iowa, 767, 58 N. W. 883; Tharp v. Lee, 25 Tex. Civ. App. 439, 62 S. W. 93; Clover v. Gottlieb, 50 La. Ann. 568, 23 So. 459; Cleveland v. Bergen Bldg. & Improv. Co. — N. J. Eq. —, 55 Atl. 117; Page, Contr. § 1434; Taylor v. Longworth, 14 Pet. 172, 10 L. ed. 405.

To contract to do a thing impossible at the time, but unknown to the other party, is an immediate breach of the contract. Bishop, Contr. 2d ed. § 1427; Woods v. North, 6 Humph. 309, 44 Am. Dec. 312.

Default on part of anyone to a contract excuses nonperformance by the other party. Brace v. Doble, 3 S. D. 110, 52 N. W. 586; Peck v. United States, 102 U. S. 64, 26 L. ed. 46.

A purchaser of land cannot be compelled to execute the contract where vendor has only bond for title. Christian v. Clark, 10 Lea, 630; Fildes v. Hooker, 2 Meriv. 424; Read v. Power, 12 R. I. 16; 3 Parsons, Contr. 9th ed. p. 350, and note.

Until plaintiff had title to the land, defendants made payments to

plaintiff at their peril. McCarthy v. Couch, 37 Minn. 124, 33 N. W. 777; Donnelly v. Eastes, 94 Wis. 390, 69 N. W. 157.

Before plaintiff can deprive defendants of their farm, in a court of equity, it should come into such court with clean hands—showing that it has done and is willing to do equity. Lewis v. Holdrege, 56 Neb. 379, 76 N. W. 890; Michigan Pipe Co. v. Fremont Ditch, Pipe Line & Reservoir Co. 49 C. C. A. 324, 111 Fed. 284; 2 Pom. Eq. Jur. § 401.

Where vendor places himself in a position such as to make it appear that tender will be refused, no tender is necessary before suit, and an offer to bring the money found due into court is sufficient. Deich-mann v. Deichmann, 49 Mo. 107; Fall v. Hazelrigg, 45 Ind. 576, 15 Am. Rep. 278; Young v. Daniels, 2 Iowa, 126, 63 Am. Dec. 477.

One who signs a contract at the request of the opposite party is a party to such contract, even though her name is not mentioned in the body of the contract. Thompson v. Coffman, 15 Or. 631, 16 Pac. 713; Ex parte Fulton, 7 Cow. 484; Scheid v. Leibschultz, 51 Ind. 38; Kendall v. Kendall, 7 Me. 172; Clark v. Rawson, 2 Denio, 135; Martinson v. Regan, 18 N. D. 467, 123 N. W. 285; Galbraith v. Payne, 12 N. D. 164, 96 N. W. 258; Burke v. Scharf, 19 N. D. 227, 124 N. W. 79.

*Purcell & Divet, T. F. Murtha,* and *Engerud, Holt, & Frame,* for respondent.

The statement of the case does not contain all the evidence offered, and this court cannot review the case *de novo.* Security Improv. Co. v. Cass County, 9 N. D. 553, 556, 84 N. W. 477; Douglas v. Glazier, 9 N. D. 615, 84 N. W. 552; Douglas v. Richards, 10 N. D. 367, 87 N. W. 600; Salemonson v. Thompson, 13 N. D. 182, 101 N. W. 320; Stevens v. Myers, 14 N. D. 398, 104 N. W. 529; United States Sav. & Loan Co. v. McLeod, 10 N. D. 111, 86 N. W. 110; Eakin v. Campbell, 10 N. D. 416, 87 N. W. 991; Geils v. Fleugel, 10 N. D. 211, 86 N. W. 712; Kipp v. Angell, 10 N. D. 199, 86 N. W. 706; Douglas v. Glazier, 9 N. D. 615, 84 N. W. 552; Little v. Phinney, 10 N. D. 351, 87 N. W. 593; Rev. Codes, § 7229.

In the abstract, there is a demand for a retrial of all issues, and also an "assignment of errors." Neither of these is printed with and as a part of the statement, and this court is without jurisdiction to try the case *de novo.* Sternberg v. Larson, 20 N. D. 635, 127 N. W. 993;

State Finance Co. v. Mather, 15 N. D. 394, 109 N. W. 350, 11 Ann. Cas. 1112; Kelly v. Pierce, 16 N. D. 234, 12 L.R.A.(N.S.) 180, 112 N. W. 995; Kinney v. Brotherhood of American Yeomen, 15 N. D. 30, 106 N. W. 44; Rule XVII, 6 N. D. XXIII; State v. Wright, 20 N. D. 220, 126 N. W. 1023, Ann. Cas. 1912C, 795; Sucker State Drill Co. v. Brock, 18 N. D. 532, 123 N. W. 667; Smith v. Kunert, 17 N. D. 120, 115 N. W. 76; O'Keefe v. Omlie, 17 N. D. 404, 117 N. W. 353; Marck v. Minneapolis, St. P. & S. Ste. M. R. Co. 15 N. D. 86, 105 N. W. 1106.

Defendant Carrie Johnstone was not a party to the contract, so as to acquire any rights to the land in question. Blackmer v. Davis, 128 Mass. 538; Lancaster v. Roberts, 144 Ill. 213, 33 N. E. 27; Evans v. Conklin, 71 Hun, 536, 24 N. Y. Supp. 1081; Lothrop v. Foster, 51 Me. 367; Cox v. Wells, 7 Blackf. 410, 43 Am. Dec. 98; Davis v. Bartholomew, 3 Ind. 485; M'Farland v. Febiger, 7 Ohio, pt. 1, p. 194, 28 Am. Dec. 632.

The contract in this case was merely a preliminary agreement, and not a complete enforceable contract of which specific performance can be compelled. Sibley v. Felton, 156 Mass. 273, 31 N. E. 10; Los Angeles Immigration & Land Co-op. Asso. v. Phillips, 56 Cal. 545; Kulberg v. Georgia, 10 N. D. 461, 88 N. W. 87.

Plaintiff was in a position to acquire the full legal title to convey to defendant according to agreement, when the time came to do so. Espy v. Anderson, 14 Pa. 311; Irvin v. Bleakley, 67 Pa. 29; Martinson v. Regan, 18 N. D. 467, 123 N. W. 285; Townshend v. Goodfellow, 40 Minn. 312, 3 L.R.A. 739, 12 Am. St. Rep. 736, 41 N. W. 1056; Easton v. Montgomery, 90 Cal. 307, 25 Am. St. Rep. 123, 27 Pac. 280; Haffey v. Lynch, 143 N. Y. 241, 38 N. E. 298; Irvin v. Bleakley, 67 Pa. 29; Tierman v. Roland, 15 Pa. 440; Loveridge v. Coles, 72 Minn. 57, 74 N. W. 1109; Robb v. Montgomery, 20 Johns. 15; Runkle v. Johnson, 30 Ill. 328, 83 Am. Dec. 191; Silfver v. Daenzer, 167 Mich. 362, 133 N. W. 16.

Plaintiff was ready, willing, and able to fully perform, and offered to do so. Easton v. Montgomery, 90 Cal. 307, 25 Am. St. Rep. 123, 27 Pac. 280; Warvelle, Vend. & P. § 289; Richards Trust Co. v. Beach, 17 S. D. 432, 97 N. W. 358; Stearns v. Clapp, 16 S. D. 558, 94 N. W. 430; Donley v. Porter, 119 Iowa, 542, 93 N. W. 574; 3

Page, Contr. §§ 1436–1443; Bryson v. McCone, 121 Cal. 153, 53 Pac. 637; Stephenson v. Cady, 117 Mass. 6; Armstrong v. St. Paul & P. Coal & I. Co. 48 Minn. 113, 49 N. W. 233, 50 N. W. 1029; Peters Grocery Co. v. Collins Bag Co. 142 N. C. 174, 55 S. E. 90; Johnson Forge Co. v. Leonard, 3 Penn. (Del.) 342, 57 L.R.A. 225, 94 Am. St. Rep. 86, 51 Atl. 305; Pearce v. Alward, 163 Mich. 313, 128 N. W. 210.

Where it is apparent that an offer to perform would be unavailing, it is not necessary. Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207; Plummer v. Kelly, 7 N. D. 88, 73 N. W. 70; 36 Cyc. 702.

Where a contract is submitted to the opposite party for examination, and he fails to point out objections, he is estopped to come into court and make them afterwards. Woodward v. McCollum, 16 N. D. 47, 111 N. W. 623; Frenzer v. Dufrene, 58 Neb. 432, 78 N. W. 719; North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 478, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453; Rankin v. Rankin, 216 Ill. 132, 74 N. E. 763; Boston & W. Street R. Co. v. Rose, 194 Mass. 142, 80 N. E. 498; Zeimantz v. Blake, 39 Wash. 6, 80 Pac. 822.

Specific performance of a contract will not be decreed, unless it can be enforced against the party seeking it, were he unwilling. Knudtson Land Co. v. Robinson, 18 N. D. 12, 118 N. W. 1051; 36 Cyc. 622, note 19; Pom. Spec. Perf. 406; Buswell v. O. W. Kerr Co. 112 Minn. 388, 128 N. W. 459, 21 Ann. Cas. 837; George v. Conhaim, 38 Minn. 338, 37 N. W. 791; Steiner v. Zwickey, 41 Minn. 448, 43 N. W. 376; Bigler v. Morgan, 77 N. Y. 312; Maupin, Marketable Title, 2d ed. p. 47; Hussey v. Roquemore, 27 Ala. 281; Coffin v. Heath, 6 Met. 76; Whitney v. Stearns, 11 Met. 319; St. Clair v. Smith, 3 Ohio, 355; 22 Cyc. 664; Ralston v. Lahee, 8 Iowa, 17, 74 Am. Dec. 291; Melton v. Brown, 20 Ky. L. Rep. 882, 47 S. W. 764; Daingerfield v. Smith, 83 Va. 81, 1 S. E. 599; Waterman v. Lawrence, 19 Cal. 210, 79 Am. Dec. 212; Eidam v. Finnegan, 48 Minn. 53, 16 L.R.A. 507, 50 N. W. 933; Rankin v. Schofield, 70 Ark. 83, 66 S. W. 197; 22 Cyc. 698, 699; Blanton v. Rose, 70 Ark. 415, 68 S. W. 674; Washabaugh v. Hall, 4 S. D. 168, 56 N. W. 82; Watts v. Waddle, 6 Pet. 399, 8 L. ed. 441; Adams v. Hartzell, 18 N. D. 221, 119 N. W. 637; Murphy v. Plankinton Bank, 13 S. D. 501,

83 N. W. 575; Probate Code (S. D.) § 219, (F. 1298); Rome Land Co. v. Eastman, 80 Ga. 683, 6 S. E. 586; Higginbotham v. Thomas, 9 Kan. 328; Black Hills Nat. Bank. v. Kellogg, 4 S. D. 312, 56 N. W. 1071; Williams v. Schembri, 44 Minn. 250, 46 N. W. 403; 36 Cyc. 638; 44 Cent. Dig. cols. 1688–1696.

Oral arrangements cannot be permitted to contradict written instruments as' to the transfer of land. Fitzgerald v. Burke, 14 Colo. 559, 23 Pac. 993; Bradley v. Harter, 156 Ind. 499, 60 N. E. 139; Ft. Scott Coal & Min. Co. v. Sweeney, 15 Kan. 244, 12 Mor. Min. Rep. 166; 11 Cent. Dig. col. 2018; Johnson v. Pugh, 110 Wis. 167, 85 N. W. 641; Merchants' State Bank v. Ruettell, 12 N. D. 519, 97 N. W. 853; First Nat. Bank v. Prior, 10 N. D. 146, 86 N. W. 362; Page, Contr. § 1350; Cughan v. Larson, 13 N. D. 379, 100 N. W. 1088; Foster v. Furlong, 8 N. D. 282, 78 N. W. 986; Mettel v. Gales, 12 S. D. 632, 82 N. W. 181.

In specific performance cases, where money compensation is awarded in lieu of deficiency of the land to be conveyed, it must be fixed at the actual value of the land which ought to be conveyed. Rev. Code, §§ 6610 and 6611; 6 Pom. Eq. Jur. §§ 831–837.

Cash can only be substituted for land, in such cases, where the other party is willing to accept it. 6 Pomeroy, Eq. Jur. § 833; 2 Warvelle, Vendors, § 749; Knudtson v. Robinson, 18 N. D. 12, 118 N. W. 1051.

The practical construction of a contract, placed upon it by the parties to it, will control. 9 Cyc. 588, note 45; 9 Cyc. 590, notes 47 and 48; Page, Contr. §§ 1126, 1127; Topliff v. Topliff, 122 U. S. 121, 131, 30 L. ed. 1110, 1114, 7 Sup. Ct. Rep. 1057; Western U. R. Co. v. Smith, 75 Ill. 496; Vermont & C. R. Co. v. Vermont C. R. Co. 34 Vt. 63.

Defendants' inability and refusal to perform abrogated the contract, and plaintiff could so treat it without formal notice of cancelation. N. D. Rev. Code, § 7494; Gen. Laws (Minn.) 1897, chap. 223, p. 431; Joslyn v. Schwend, 85 Minn. 130, 88 N. W. 410; Womack v. Coleman, 92 Minn. 328, 100 N. W. 9; Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037.

The acts of the defendant constituted an abrogation and renunciation of the contract, and his rights were terminated, without notice. Simp-

son v. Atkinson, 39 Minn. 238, 39 N. W. 323; Meyers v. Markham, 90 Minn. 230, 96 N. W. 335, 787; 36 Cyc. 728; 9 Cyc. 649; 3 Page, Contr. §§ 1436–1443; Stanford v. McGill, 6 N. D. 543, 38 L.R.A. 760, 72 N. W. 938; Giltner v. Rayl, 93 Iowa, 16, 61 N. W. 225; Beyson v. McCone, 121 Cal. 153, 53 Pac. 637; Stephenson v. Cady, 117 Mass. 6; Armstrong v. St. Paul & P. Coal & I. Co. 48 Minn. 113, 49 N. W. 233, 50 N. W. 1029; Peters Grocery Co. v. Collins Bag Co. 142 N. C. 174, 55 S. E. 90; Johnson Forge Co. v. Leonard, 3 Penn. (Del.) 342, 57 L.R.A. 225, 94 Am. St. Rep. 86, 51 Atl. 305; Pearce v. Alward, 163 Mich. 313, 128 N. W. 210; Judd v. Skidmore, 33 Minn. 140, 22 N. W. 183; Rossbach v. Micks, 89 Neb. 821, 42 L.R.A. (N.S.) 444, 132 N. W. 526.

SPALDING, Ch. J. (after stating the facts as above). The defendants' contention and attitude during all the time since the execution of the contract set out above have been based upon the supposition that the contract called for title in plaintiff at the time it was entered into, and that, without such title, defendants could not be compelled to perform in accordance with the requirements of the contract. Herein they are mistaken. The contract did not require title to be in plaintiff when executed. The plaintiff did not agree to show title in itself at such time. It agreed to convey title at a future date. While it is altogether probable that, had the plaintiff been without any interest in section 13, the contract to convey might not be sanctioned, yet it is well-established law that, as a general rule, when a contract is entered into in good faith, the vendor having an estate or interest in the land, it is not necessary that he be actually in a situation to perform at the time the contract is made; that the most that is required of him is that he be able to perform when the vendee has a right to call upon him for performance. This is the established law of this state. Martinson v. Regan, 18 N. D. 467, 123 N. W. 285. See also: Townshend v. Goodfellow, 40 Minn. 312, 3 L.R.A. 739, 12 Am. St. Rep. 736, 41 N. W. 1056; Easton v. Montgomery, 90 Cal. 307, 25 Am. St. Rep. 123, 27 Pac. 280; Gray v. Smith, 76 Fed. 525.

Courts do not make contracts for parties. Had defendants desired a perfect title before transferring their property or making payments, they should have contracted with reference to the title, at the date of

contract, rather than for a conveyance to be based alone on the title of plaintiff at a future date. For this reason the excuse offered by defendants for their refusal to perform in accordance with the terms of the contract, or at all, was invalid, and furnished no justification for their default in the terms of the contract which they had entered into. Authorities cited by defendants are not in point, on this contract, in this state.

As far as the equities in this case go, the record discloses, and particularly the correspondence, which we have not set out, that for many months the plaintiff was seeking to carry out its agreement, and was only requiring of the defendants that they perform on their part the conditions which were required by the contract they had made. The contracts which were presented to defendants were executed by the plaintiff, and all that was necessary in the first instance was for the defendant to have executed them, and to have deeded the Sioux Falls property, as the defendant John Johnstone agreed to do. We need not consider whether the contract was the joint contract of John and Carrie Johnstone or only the contract of John Johnstone, in the view of the law which we take. It seems to have developed that the title to the Sioux Falls property was in Carrie Johnstone, and that, after her becoming insane, she could not have executed, and there was no one who, on her behalf, could have executed, a warranty deed thereto. This, however, we deem, under the facts, immaterial. They were given every opportunity that any reasonable person could demand, to perform. They refused until the value of the land had greatly enhanced, and then alleged that they were ready to perform, and claimed the right to pay all cash, instead of conveying the Sioux Falls property as a part of the consideration. The plaintiff proceeded in accordance with the provisions of our statute for the cancelation of contracts. No equities arose over any payments made, because none had been made by the defendants, and it appears to us to be a clear case in favor of the plaintiff.

We may add that there was some claim made in argument, of fraud on the part of plaintiff by reason of the fact that defendants had seen, or been given, a circular advertising lands for sale by plaintiff, which circular stated that the title was perfect and held under only one conveyance from the government. Whether, had defendants bought on

25 N. D.—11.

the strength of this representation, it would have constituted fraud on the part of plaintiff, need not be determined, as fraud was not pleaded; and the record shows that plaintiff was in position, at the time designated, to convey a merchantable title to defendants had they put themselves in position to demand or receive it.

To sum the case all up, it amounts to this, that the plaintiff held an equitable title to section 13, and could procure legal title thereto whenever needed; that the defendants were given every opportunity to comply with the terms of their contract, but never made any attempt to do so. They paid nothing down; they failed to transfer their Sioux Falls property, as agreed, or at all; they did not make the payments called for by the contract, and refused to execute the new contracts. They attempted to cast all the burdens on the plaintiff, making it take all the risks involved, on both sides of the transaction. Without right to do so they entered into the possession of section 13, cropped it several years, there was a material increase in its value, and after this has occurred they seek to be relieved from compliance with the terms of their compact, and to hold plaintiff, not only to the conditions thereof, but to additional conditions or requirements which were never contemplated or provided for in the contract. To permit the defendants to maintain specific performance under such facts and circumstances would certainly afford them an advantage which no court of equity can permit, in the face of the objection of the other party.

As near as we can figure from the record, the defendants had the use of 1,450 cropped acres, and they broke, on the land, 480 acres. The trial court granted the plaintiff judgment for $3,000 for the use and occupation of this land. The evidence regarding its value is very unsatisfactory. Were it perfectly clear we should not assume to modify this judgment, but in the condition in which we find it we think this allowance is excessive, and that, taking the figures given as near as we can reach them, this judgment should be modified to the sum of $2,185, that being $2.50 per acre for the use of the cultivated land, with a credit of $3 per acre for the breaking. The District Court will modify the money judgment in accordance with these views, and when so modified it stands affirmed. Each party will pay its own costs on appeal.

BURKE, J., did not participate; J. A. COFFEY, Judge of the Fifth Judicial District, sitting in his place by request.

### On Petition for Rehearing.

SPALDING, Ch. J. This court would have been more than justified in granting the motion made to strike out the statement of the case, appellants' abstract, and brief, for failure to conform in any material respect to the rules of this court. The original opinion was written with the idea that it would, however, be more satisfactory to both parties to have a decision on the merits than on a question of practice; and notwithstanding the fact that the failure to comply with the rules imposed upon this court much arduous labor, and rendered it extremely difficult to arrive at a determination of what questions were involved, counsel for appellant files a petition for a rehearing in which he, evidently relying on the incomplete abstract prepared by him, one which sets out only that part of the evidence which he apparently thinks favorable to his clients, states that this court has misstated the facts. Doubtless we did state facts which did not appear in his abstract. There are, however, two abstracts, neither one complete. We were compelled to reach the facts as best we could from the pleadings omitted from the original abstract, and from a search of the evidence as scattered without order through both incomplete abstracts. After spending nearly a week on a review of the record on the petition for rehearing, we are unable to discover that we materially misstated any fact. And what we say here is more in explanation of our holding than in stating any new or different propositions of law. While our opinions are not such as a case of this importance would seem to require, they are as elaborate as the brief of appellant and his specifications justify.

The defense was that the defendant Johnstone was entitled to specific performance of the contract, because plaintiff did not have title when the contract was made. Counsel suggests in his application for rehearing, for the first time, that appellant Johnstone had no knowledge of title not being in respondent when he executed the contract, but he made no specification on the subject. The evidence submitted by the defendants was very brief, and on this point we are not clear that it shows a lack of knowledge regarding respondent's title when the con-

tract was made, on the part of the defendant Johnstone. It certainly does not show that he relied on any representation made by the plaintiff on the subject. While defendant Johnstone himself testified that he was able, ready, and willing to carry out the contract, the pleadings and the evidence are to the effect that he could not do so by reason of the title to the Sioux Falls property being in the name of his wife, who, long before the trial, was adjudged insane, and remained so to the conclusion of the trial, if not so now. In words he repudiated the contract by refusing to carry out any of the terms which it imposed upon him, yet, after acquiring full knowledge as to the title, if he was not possessed of such knowledge when he executed the contract, and apparently without the knowledge or consent of respondent, its place of business being in St. Paul, Minnesota, he moved upon and proceeded to occupy and cultivate the land, thus repudiating the contract by word of mouth, but affirming it by act, refusing to accept those parts of it which were not in his favor, but at the same time insisting on reaping all the benefits which he contemplated obtaining under the contract.

As far as we are able to interpret the authorities cited by respondent, they are not in point; they are cases where the payment and delivery of deed were to be coincident, or where the contract had been made with reference to the condition of the title when entered into, or in which the vendor was not in position to acquire title. In the case at bar the time had not arrived for the delivery of title, and the conditions were fully explained to Johnstone before notice of cancelation was given. We may add to the facts originally stated that an officer of plaintiff made a trip from St. Paul to Beach a few days before such notice was given, and then restated to Johnstone the facts as to the title, and informed him of the conditions of its contract for title, and that he could get a deed on payment; that he told him they could let the matter rest no longer, and requested him to have the contracts executed; but that he refused absolutely to close the deal, and was then notified that steps would be taken at once to cancel the contract.

Much stress is laid upon the fact that Carrie Johnstone is insane and that her rights ought not to be litigated. The contract was not with her, but was with John Johnstone. However, if she had rights,

and is incompetent to litigate them, she is certainly incompetent to transfer the property which her husband contracted to convey.

As bearing on this case see: Easton v. Lockhart, 10 N. D. 181, 86 N. W. 697; Kulberg v. Georgia, 10 N. D. 461, 88 N. W. 87; Annis v. Burnham, 15 N. D. 577, 108 N. W. 549; Bennett v. Glaspell, 15 N. D. 245, 107 N. W. 45; Duluth Loan & Land Co. v. Klovdahl, 55 Minn. 341, 56 N. W. 1119; Provident Loan Trust Co. v. McIntosh, 68 Kan. 452, 75 Pac. 498, 1 Ann. Cas. 906; Trask v. Vinson, 20 Pick. 105; 2 Beach, Eq. Jur. § 611. The cases from 55 Minn. and 68 Kan. supra, are directly in point.

While we conclude that the petition for a rehearing must be denied, the money judgment should be further modified by making the allowance for breaking $3.50 per acre instead of $3, and while it appears that Johnstone never literally paid any taxes on section 13, he did purchase it at tax sale, on two or more occasions, and may have caused the taxes to be paid one year. The amount of his tax certificates, and such receipts for taxes as may be produced and show payment by him or Carrie Johnstone, with interest thereon at 7 per cent, will be deducted from the amount heretofore found due by this court, as will the 50 cents per acre for breaking.