## SPARKS v. HELMER et al.

No. 19165. Opinion Filed Dec. 17, 1929.

Rehearing Denied April 8, 1930.

Nowlin, Spielman & Thomas and H. W. Patton, for plaintiff in error.

Chas. R. Alexander, for defendants in error.

HERR, C. This is an action originally brought in the district court of Woodward county by J. W. Sparks against David Helmer and Margareth Helmer for specific performance of a contract for the sale of real estate.

It appears that on the 24th day of February, 1926, defendants, then being the owners of a half section of land in Woodward county, entered into a written contract with

plaintiff whereby they agreed to sell the same to him for the sum of $7,500.

The contract provided that defendants were to furnish an abstract of title showing marketable title, the same to be approved by an attorney selected by plaintiff. The Pioneer Mortgage Company, of Topeka, Kan., held a first mortgage against the premises in the sum of $4,000, and a second mortgage in the sum of $100. The contract further provided that defendants should have until March 15, 1926, to have release of these mortgages forwarded to Woodward, Okla.; possession was to be given plaintiff April 1, 1926.

The contention of plaintiff is that defendants, after repeated demands made by plaintiff, failed and refused to perform the contract on their part in that they failed to furnish abstract of title; failed to pay off and discharge these mortgages, and failed to deliver possession as provided by the contract.

Defendants claim they were at all times ready and willing to perform on their part and anxious to do so, but that plaintiff abandoned the contract and refused to perform on his part.

The trial was to the court, resulting in judgment in favor of defendants. Plaintiff appeals.

The sole contention of plaintiff is that the judgment is not supported by the evidence. There is some conflict in the evidence, but, in our opinion, the clear weight thereof is with defendants.

Plaintiff testified that shortly after execution of the contract, defendants attempted to rescind, giving as their reason that they were offered $500 more for the land; and plaintiff further testified that defendants offered him $100 to be released from the contract; that defendants made no effort to comply with the contract; that they failed to furnish an abstract; that they did not procure a release of the mortgages and failed to give possession, as provided by the terms thereof.

Several witnesses testified that defendants told them they were offered more for the land than plaintiff agreed to pay and that they did not intend to convey the land to plaintiff.

Defendants testified that they made every effort to induce plaintiff to take the land and close the deal; that they procured the abstract from the mortgage company, brought the same down to date, and left it with Mr. Wybrant at Woodward, the attorney selected by plaintiff to pass upon the title; that the same was kept in possession of said Wybrant 17 days, but that he failed and neglected to examine the same and pass upon the title, and the abstract was, sometime thereafter, returned by defendants to the mortgage company.

Defendants further testified that during all this time, they were endeavoring to persuade plaintiff to close the deal, and that plaintiff refused to do so claiming that defendants had breached the contract in that they refused to turn over certain chicken coops and hog troughs, and other articles, which he claimed were included in the contract of sale, and that they did not procure a release of the mortgages held by the Pioneer Mortgage Company.

It further appears from the evidence that defendants enlisted the services of Alex Geismer, cashier of the Bank of Woodward, to assist them in persuading plaintiff to close the deal. Mr. Geismer testified that he tried to induce plaintiff to close the deal, but that plaintiff refused on the ground that the mortgages held by the mortgage company had not been released. He further testified that he advised plaintiff that the deal could be closed by plaintiff deducting the amount due on the mortgages held by the mortgage company from the purchase price, and that the balance could be used in taking up the mortgages and procuring the releases; that plaintiff refused to do so and stated he would not close the deal unless defendants paid him $1,000 damages.

Other efforts were made by defendants to induce plaintiff to permit part of the purchase price to be used to obtain releases of these mortgages, but plaintiff refused to permit this to be done.

The evidence is undisputed that shortly after the execution of the contract, defendants sold all their stock on the farm, together with their farming implements, preparatory to moving to Texas, and were ready and willing to deliver possession of the premises to plaintiff in accordance with the terms of the contract.

It further appears that on April 6, 1927, defendants served written notice on plaintiff that, unless some effort were made by him to close the deal by April 13th, they would conclude that he had rescinded the contract and they would abandon their intention of vacating the premises. The testimony is that plaintiff made no effort, from the time of receiving this notice until some-

time in the early part of June, to close the deal, at which time he became anxious to close the same and demanded that defendants comply with the contract. At this time, however, defendants, owing to the conduct of plaintiff, had abandoned their intention to move to Texas and repurchased live stock and farming tools preparatory to harvesting the wheat grown on the land, and, of course, refused to comply with the contract. In this we think defendants were well within their legal rights, as, from the conduct of plaintiff, they had a right to conclude that he had abandoned the contract.

It is argued by plaintiff that defendants breached the contract by failing to pay off and discharge the mortgages held by the mortgage company. On this proposition, the evidence is conclusive that the defendants were willing to permit a part of the purchase price to be used to take up these mortgages. It also appears that arrangements could readily have been made to procure the releases in this manner. The purchase price of the land, under the contract, was in excess of the amount due on these mortgages. Plaintiff could in no wise have been injured by permitting this to be done. The trial court held this a substantial compliance with the contract on the part of defendants. With this holding we agree.

In the case of Martin v. Stone, 79 Mo. App. 309, it is said:

' The defendant's purpose, in the case at bar, was to pay the incumbrance out of the remainder of the purchase money, and that the owner of the debt was present and willing to accept the money and release the land; held, that to predicate a right of rescission, on the part of plaintiff, on such a ground, is too technical for serious consideration."

The trial court made numerous findings of facts favorable to defendants, among which are the following:

"The court is of the opinion that the defendant did everything a good citizen could do, that an honorable mean could do, to close this deal. He went to the plaintiff time after time, in good faith, and told him that he had sold his home and had sold his property and had property in the state of Texas and wanted to go there, and it was getting late, and he wanted to get down there and put in his crop and all of those things, but the plaintiff said: 'No. You haven't complied with your contract.'

"The court is of the opinion that the plaintiff in this case did not act or conduct himself in good faith; that he had something in his mind for some reason, for not wanting to complete that deal and did not do it. * * *"

These findings are clearly supported by the evidence.

Judgment should be affirmed.

LEACH, JEFFREY, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.