**WEBB et al. v. CONSOLIDATED OIL CO.***
No. 8716.

Circuit Court of Appeals, Fifth Circuit.
Jan. 4, 1939.

Vincent Stine, of Henrietta, Tex., and Guy Rogers, of Wichita Falls, Tex., for appellants.

John Humphrey, of Wichita Falls, Tex., for appellee.

Before HOLMES and McCORD, Circuit Judges, and DEAVER, District Judge.

DEAVER, District Judge.

Appellants on June 11, 1937 executed to appellee a gas and oil lease covering certain described land in the State of Texas, and simultaneously entered into a written contract with appellee. The lease was attached to the contract and, as provided by the contract, deposited with a bank as escrow agent.

The contract provided that lessors should furnish to lessee an abstract of title within ten days from the date of contract; that lessee should have ten days from date of delivery of the abstract to examine it and make known its objections, if any; that lessors should have ten days from the date objections were made known to them to cure the objections; that lessee, within ten days from the date the abstract was made to reflect good and merchantable title, should pay to lessors or deposit to their credit in said bank the sum of $5 per acre; that lessee should spud in a well on the land within seventy days from the date of the contract; that if lessors furnished the abstract showing good and merchantable title and lessee failed to pay or deposit said money, then $5 per acre should be considered liquidated damages; that, if lessee paid or deposited said money, then the escrow agent should deliver the lease to lessee when the well had been spudded in, within the time provided.

Lessors within the time allowed furnished an abstract. Lessee within the time allowed made several objections in writing

*Rehearing denied Feb. 4, 1939.

and stated what it would require with reference to each objection. Lessee set out as one objection that there was an outstanding - trust deed to secure a $12,500 note, payable to Bankers Life Company, and required that said trust deed be released or subordinated to the lease. Lessors within the prescribed time furnished a supplemental abstract curing all the objections except the one with reference to the trust deed.

The Bankers Life Company's home office was in Des Moines, Iowa, and its Texas office was in Dallas. At the time the original contract was made, R. J. Matthews, lessee's agent in charge of this matter, was informed of the trust deed and was told by lessors that the Bankers Life Company would subordinate its lien to the lease and that the agent of lessors would go to Dallas and make arrangements.

On June 16, lessee's agent was told that lessors would talk to the Bankers' Life in Dallas and that they were going to prepare the subordination agreement there and send it to Des Moines for execution. Two or three days after the abstract was brought in, lessee's agent was told by one of lessors that the Bankers' Life was going to take the money that he would get from the lease and lessee's agent said it was all right for him to pay the money to the Bankers' Life if he wanted to.

The Bankers' Life Company executed the subordination agreement and sent it to its Dallas office, to be delivered upon payment of $1,938.75, it being understood between lessors and the Bankers' Life Company that the money would be paid out of the purchase money of the lease. Lessors obtained from the Dallas office a copy of the subordination agreement and delivered it to lessee's attorney, along with the supplemental· abstract, which cured all the other objections, and told the attorney that the matter would be handled by draft as agreed by Mr. Matthews. The attorney then stated that he was concerned only with the abstract and the other matter was up to Mr. Matthews. The supplemental abstract and copy of the subordination agreement were delivered to the attorney on July 6, the last day allowed by the contract for curing objections. On that same day, the attorney wrote to lessee referring to his original opinion of June 25, which set out requirements to be met to cure objections to the title, and saying that he

had been 'furnished a supplemental abstract and stating that, according to the abstract, the trust deed was a subsisting lien and that there was not any instrument shown in the abstract wherein this lien was subordinated to the lease.

On· July 8, 1937, the Bankers' Life wired lessee stating that the subordination agreement had been executed and could be delivered upon payment of $1,938.75 and asking if the agreement should be sent to the escrow bank for collection.

On the same day, July 8, lessee wrote to lessors saying that the abstract did not at that time reflect good and merchantable title in that the deed of trust had neither been released nor subordinated to the lease and that as the time was up for curing objections, the lessee considered itself released from any · further liability under the contract, and stating further that a copy of this letter was being sent to the bank for its information and guidance and that this letter was its authority to return the lease to lessors.

The subordination agreement was received in the Dallas office on July 2, 1937 and from that day down to the day of trial the Bankers' Life was ready and willing to deliver the instrument upon payment of $1,938.75.

Lessors sued lessee for the liquidated damages in the sum of $5,477.50. At the conclusion of the evidence, both plaintiffs and defendant. made a motion for a directed verdict. The court directed a verdict in favor of the defendant. Plaintiffs appealed.

Appellants assign as error the action of the court in directing a verdict for defendant and in failing to direct a verdict for plaintiffs.

■ Both parties having moved for a directed verdict, the only question for determination by this court is whether there is any substantial evidence to support the verdict directed.

Appellants contend that they substantially complied with their contract.

■ In general, where vendor contracts to furnish good and merchantable title, an outstanding lien does not justify rejection of the title, if by a tripartite settlement among the vendor, the vendee and the lienor, upon completion of the sale, the lien can be satisfied out of the purchase money. See in this connection, Stokes v. Waller, Tex.Civ.App., 230 S.W.

1085; Long v. Martin, Tex.Civ.App., 234 S.W. 91; Kadow v. Cronin, 97 N.J.L. 301, 116 A. 427; Sparks v. Helmer, 142 Okl. 219, 286 P. 306; Griesemer v. Hammond, 18 Cal.App. 535, 123 P. 818; Continental Oil Company v. Mulich, 10 Cir., 70 F.2d 521; Bond v. Lowenstein, 111 N.J.Eq. 442, 162 A. 544; Seerup v. Goraczkowski, 159 Minn. 364, 199 N.W. 94; Buchhauser v. Yudelson, 287 Ill. 138, 122 N.E. 100; Eaton v. Sadler, 215 Ala. 161, 110 So. 10; Beatrous v. Dies, 167 La. 665, 120 So. 44; Riley v. Wheat, 45 S.D. 320, 187 N.W. 425; Schaengold v. Dick, 36 Ohio App. 78, 172 N.E. 839; 66 C.J. page 928, Sec. 622; 58 C.J. page 1117, Sec. 412.

Appellants say the case comes within that rule.

Appellee argues that time was of the essence of the contract and that all objections to the title must have been cured within the time provided; that to cure the objection based on the outstanding lien, appellants must have either actually incorporated the subordination agreement in the abstract or have given appellee reasonable assurance that the title was good and merchantable and that appellants did neither and, therefore, breached the contract.

■ We agree that time was of the essence and that, with reference to curing objections, appellants were bound to do, on or before July 6, 1937, whatever was required by the contract, construed in the light of the conduct and knowledge of the parties.

■ It would be possible, no doubt, for parties to contract in specific terms that title would not be accepted unless the abstract itself showed good title. In such a case, if time is of the essence and the purchase money is payable after the last day for furnishing the abstract, the deal could not be closed by satisfying a lien out of the purchase money. Under such a contract, the vendor would have to pay off the lien with other funds or the lienor would have to release his lien without simultaneously receiving payment. While in this case the parties did contract for an abstract and did make time of the essence, still, under the facts existing when the contract was made and from that time down to the last day for furnishing the abstract, of which both parties had notice, it cannot be said that the parties intended to contract for strict compliance with the technical formality of placing the subordination agreement in the abstract. The parties to this contract meant that by July 6 appellants should be in position to convey good title.

Under the contract, July 6 was the last day for curing objections to the title. Appellee contends that it had to accept or reject the title on that day; that acceptance would have been final; and that, if on the day the money was to be paid the subordination agreement was not delivered, appellee would nevertheless have been bound to take the title with the encumbrance still outstanding. We cannot agree that the law would operate to bring about that result. If for all practical business purposes appellants were in position to deliver good title on July 6, then appellee could have elected to close on that day or at any time within ten days and, if on the closing day, appellants did not tender the subordination agreement, appellee would not have been bound to accept the title or pay the money.

In its motion to direct a verdict, appellee says:

"We recognize that there is a rule that if the subordination agreement or release is deposited in a certain escrow depository, where it was without the control of the holders of the lien, with instructions to apply the proceeds of the purchase price to the payment, or discharge of the lien, that that will amply, substantially comply, with the obligation to furnish a good title, but this was never done."

In its brief, appellee states that appellants "could no doubt have presented the subordination agreement" but that on July 6, there was no assurance by appellants or the lienor that the subordination agreement would be furnished.

■ It is not quite clear what appellee contends would have constituted reasonable assurance. It could not have been expected that lienor would deliver the agreement or place it beyond its control without simultaneous payment. If the contention is that appellants should have had lienor, on or before July 6, to give assurance directly to appellee that the lien would be subordinated, then the contention is untenable, if the information which appellee had was sufficient to act upon in a real estate transaction. What assurance did appellee have? Both parties knew from the first that the lien was outstanding and that the plan was to obtain a sub-

ordination agreement. Lienor did in fact execute the agreement and not only notified appellants' agent that it was ready for delivery upon payment of the sum named but gave him a copy of it. Appellants' agent delivered the copy to appellee's attorney and explained that the matter would be handled by attaching the original to a draft. In addition, it is clear from the testimony that appellee's agent, Matthews, had discussed the subordination agreement and the payment out of the purchase money and had said it was all right for one of appellants to pay his part of the money to lienor if he wanted to.

Under those facts, appellee could not stand on a technicality, not affecting any substantial right, and repudiate the contract. Appellee had reasonable assurance on July 6.

The evidence shows that the subordination agreement would, in fact, have been delivered simultaneously with payment of the money. The attorney did not certify that appellants were not in position to deliver good title, but only that the abstract did not show subordination of the lien. He could have certified that the title was good subject only to delivery of the agreement upon payment of the money. Appellee could then have elected to close the trade on July 6th or at any time within ten days thereafter. On that day appellants were in position to deliver good title and nothing remained to be done except to receive the subordination agreement upon payment of the money. That could have been done without subjecting appellee to any more risk than is involved in any real estate transaction in which liens are satisfied out of the purchase money.

Appellee cites: Alling v. Vander Stucken, Tex.Civ.App., 194 S.W. 443; Giles v. Union Land Co., Tex.Civ.App., 196 S.W. 312; Crutcher v. Aiken, Tex.Civ.App., 252 S.W. 844; Shamrock Oil & Gas Co. v. Williams, Tex.Civ.App., 63 S.W.2d 570; Williams v. Shamrock Oil & Gas Co., 128 Tex. 146, 95 S.W.2d 1292, 107 A.L.R. 269; Friedrich v. Seligmann, Tex.Civ.App., 22 S.W.2d 749; Wright v. Glass, Tex.Civ. App., 174 S.W. 717; Mahamey v. 580 Madison Avenue, 135 Misc. 603, 238 N.Y. S. 651; Mahaney v. 580 Madison Avenue, 233 App.Div. 668, 249 N.Y.S. 913; Boyd v. Boley, 25 Idaho 584, 139 P. 139; Bell v. Stadler, 31 Idaho 568, 174 P. 129;

Richards v. Jarvis, 41 Idaho 237, 238 P. 887; Johnson v. Herbst, 140 Minn. 147, 167 N.W. 356; G. P. Nicolopoolos v. A. H. Hill, 217 Ala. 589, 117 So. 185, 59 A. L.R. 185.

Some of those authorities are not in point. Some are distinguishable. None requires a different conclusion.

In addition to the points above discussed, appellants state in their brief the following contentions:

■ 1. That appellants were under no duty to tender the subordination agreement after repudiation of the contract by appellee, citing: Burks v. Neutzler, Tex. Com.App., 2 S.W.2d 416; Moore v. Jenkins, 109 Tex. 461, 211 S.W. 975; Vendor and Purchaser, 66 C.J. 955, Sec. 658; Williams v. Beasley, Tex.Civ.App., 300 S. W. 193; Continental Oil Co. v. Mulich, 10 Cir., 70 F.2d 521.

■ 2. That it was not necessary for appellants to have marketable title at the time the contract was made, citing: Anderson v. Willson, 48 Cal.App. 289, 191 P. 1016; Burke v. Wallace, 98 Fla. 604, 124 So. 30; 13 C.J. 327-331; 39 Cyc. 1410; Duluth Loan & Land Co. v. Kloovdahl, 55 Minn. 341, 56 N.W. 1119; Silfver v. Daenzer, 167 Mich. 362, 133 N.W. 16; Golden Valley Land & Cattle Co. v. Johnstone, 25 N.D. 148, 141 N.W. 76; Heller v. McGuin, 261 Ill. 588, 104 N.E. 158; Hogsed v. Gillett, 60 Mont. 467, 199 P. 907; Green v. Chandler, 25 Tex. 148, 149; Hufstutler v. Grayburg Oil Co., Tex. Com.App., 48 S.W.2d 591; Luette v. Bank of Italy National Trust & Savings Association, 9 Cir., 42 F.2d 9; Martinson v. Regan, 18 N.D. 467, 123 N.W. 285; Maupin on Marketable Title to Real Estate, 872-874; Milliken v. Townsend, Tex. Com.App., 16 S.W.2d 259; Normandy Beach Properties Corp. v. Adams, 107 Fla. 583, 145 So. 870; Searles v. Auld, 118 S.C. 430, 111 S.E. 785; Specific Performance, 58 C.J. 1104, Sec. 378; Tison v. Smith, 8 Tex. 147, 148; Vendor and Purchaser, 66 C.J. 511, 512, Sec. 40; White v. Bates, 234 Ill. 276, 84 N.E. 906.

Those two propositions are not discussed in appellee's brief. However, they state correct principles of law as applied in this case.

Under the undisputed evidence, appellants substantially complied with the contract and appellee had no right to repudiate

the contract. The court erred in directing a verdict for appellee. The judgment is, therefore, reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.